BERGER, APPELLANT, *v.* BERGER, APPELLEE, ET AL.
BERGER, APPELLEE, *v.* BERGER, APPELLANT.

(Nos. 43365, 43501, 43502 and 43503—Decided October 22, 1981.)

*Messrs. Zimmerman, Caticchio, Eisenberg & Palay* and *Mr. Richard D. Eisenberg,* for Bertine M. Berger.

*Mr. Sanford J. Berger, pro se,* and *Mr. Robert M. Fertel.*

MARKUS, J. These consolidated appeals concern rulings by judges in a multi-judge court who were not originally assigned to the case under local rules implementing the Rules of Superintendence for Courts of Common Pleas. In this case four different judges of the same court were apparently assigned or acted at various stages of its development. The record does not show which of these judges may have been the administrative judge at the time rulings were made. We hold that where the record fails to show proper reassignments of the case to the judges making those rulings, they are voidable and must be vacated on a timely motion or appeal by a party that has not waived his objection to such irregularity.

The present appeals arise from post-judgment motions in a divorce action originally assigned for hearing by a specific judge of the domestic relations

division. Presumably that original assignment was accomplished by lot, drawing a card from a sealed deck designed to prevent advance knowledge of the judge selected, as prescribed by Loc. R. 15 of the Court of Common Pleas of Cuyahoga County, General Division:

"Assignment of Civil Cases for Trial

" (A) All civil cases shall be assigned to a judge by drawing a card from a sealed deck handled by the Clerk under the supervision of the Court Administrator. The deck shall be constructed so as to insure that the identity of the next judge name in the deck is unknown until the card is drawn.

"(B) It shall be the duty of the individual judge to handle all court activity, including motions and emergency matters, status hearings, and pretrials, trials, etc. associated with the cases assigned to him."

That procedure conforms with the requirements of C.P. Sup. R. 4[1]:

"Assignment System

"For the purpose of these rules, the individual assignment system is that system whereby, upon the filing in, or transfer to, a division of the court of a civil case, or upon arraignment in a criminal case, a case is immediately assigned by lot to a judge thereof, who thus becomes primarily responsible for the determination of every issue and proceeding in the case until its termination. Under such system, all preliminary matters, including requests for continuances, must be submitted for disposition to the judge to whom the case has been assigned, or if he is unavailable to the administrative judge.

"Each multi-judge general division of each court of common pleas shall adopt the individual assignment system as defined herein for the assignment of all cases to judges of the division for disposition."

Twenty-one months after the original assignment, a second judge of the same court granted a divorce to the plaintiff-wife and made orders for alimony and division of property. The record does not show any journal entry or other order transferring the case from the original assigned judge to the second judge. On defendant's appeal to this court, the trial court's judgment was affirmed in all respects relevant here. Further review was denied by the Ohio Supreme Court and the United States Supreme Court. The record does not show any objection by any party to the transfer of the case prior to the decision of the second judge, nor was the case assignment claimed to be error in the appeal.

While the appeal was pending, the plaintiff-wife sought a contempt order in the trial court for alleged non-compliance by the defendant-husband with the divorce decree. An order finding defendant in contempt was made by the second judge. At that time there was still no order transferring the case to the second judge, nor does the record reflect any contemporaneous objection by any party to that continued informal reassignment. Since no sanction resulted from that post-judgment order by the second judge, it seemingly had no prejudicial effect on either party.

Nineteen months after this court affirmed the divorce judgment, a third judge of the same trial court referred outstanding motions to enforce the judgment to a court referee. Shortly before that referral, defendant had filed two memoranda on those motions, with a caption showing the case assigned to the second judge, and neither of those

---

[1] While this case concerns procedures in common pleas courts, it may be appropriate to note that similar assignments are required by Rule 3(B) of the Rules of Superintendence for Municipal Courts and County Courts.

documents complained about the case assignment.

However, when the matter came before the referee, the transcript shows that defendant objected vigorously to the referral by the third judge and any potential report to the third judge, on the express ground that only the original assigned judge had authority to act on the case. In that hearing defendant objected to all past and future action on the case by any judge other than the original assigned judge. In so doing, defendant repeatedly noted that no valid transfer order had been made and that the court records still showed the case assigned to the original judge.

The trial court's referee reported his findings in writing. Defendant then filed objections to that report and a motion under Civ. R. 60(B) to vacate the second judge's divorce judgment and contempt order entered three years earlier. In each document defendant argued that only the original assigned judge had authority to act. The third judge accepted the referee's report, overruled defendant's objections, and denied defendant's motion to vacate the second judge's orders. The third judge then granted plaintiff a judgment for unreimbursed medical expenses but denied plaintiff's motion that defendant be punished for failing to return certain antiques.

Plaintiff now appeals to this court from that latter order, urging that denial of that relief was erroneous because the evidence was "sufficient" to establish plaintiff's right to the order against her former husband, and because she should have been given an additional opportunity to rebut surprising testimony by her husband.[2]

After plaintiff's notice of appeal was filed, three additional orders were made in this case. *Sua sponte* and without specifying any reason for his action, the administrative judge journalized an order transferring the case to a fourth judge of the same trial court. Two days later the fourth judge issued two orders which repeated the rulings made by the third judge one month earlier. Those two repeat orders denied defendant's motion under Civ. R. 60(B) to vacate the second judge's orders, and granted in part and denied in part plaintiff's motions for sanctions against the defendant. Defendant then filed his notices of appeal from those three orders by the administrative judge and the fourth judge. Defendant's three appeals (case Nos. 43501, 43502 and 43503) and plaintiff's appeal (case No. 43365) have been consolidated for joint consideration and disposition.

Defendant's single claimed error challenges the multiple assignments of his case and the authority of successive judges to make rulings. We note that the three rulings from which defendant appeals may be invalid on the alternative ground that they were made when the plaintiff's appeal was pending. *Vavrina* v. *Greczanik* (1974), 40 Ohio App. 2d 129 [69 O.O.2d 146]; *Cuyahoga Co. Bd. of Mental Retardation* v. *Association* (1975), 47 Ohio App. 2d 28 [1 O.O.3d 168]. However, we will consider the error raised by defendant. First, it is also argued as defendant's response to plaintiff's appeal. Second, the plaintiff's appeal may have challenged an order made by a judge lack-

---

[2] In view of our conclusion that the third judge lacked authority to make such orders, we need not consider those claimed errors. However, if the third judge did have power to make those rulings, the claimed errors would not justify reversal since they concern the weight given to conflicting testimony and the discretion applied in directing orderly proceedings. Our review of the record shows that the third judge would have been justified in his placement of the burden of proof, his weighing of the witness' credibility, and his apparent conclusion that the husband's testimony was not sufficiently surprising to merit a new hearing.

ing jurisdiction, and such an appeal may not prevent a trial court with proper jurisdiction from acting to correct that error. See 4A Corpus Juris Secundum, Appeal and Error, Section 616, page 409, and fn. 4. Further, an examination of defendant's claimed error is necessary to provide guidance for further proceedings on remand of this action.

C. P. Sup. R. 4, quoted earlier, clearly seeks to restrict case assignments in a manner that will eliminate whimsical transfers. All cases in a multi-judge court must be assigned by lot, and the assigned judge must be responsible for all substantive action on the case. Presumably that rule is intended to divide the court's responsibility in an equitable manner among the member judges, to make the respective members accountable, and to ensure an orderly disposition of the case by a judge who develops cumulative familiarity with the case. Even more significantly, restrictions on discretionary case assignments or transfers serve to inhibit real or perceived "judge shopping" and judicial favoritism.

Constitutional authority for the Supreme Court's power to establish that regulation flows from Section 5(A)(1), Article IV of the Ohio Constitution:

"In addition to all other powers vested by this article in the supreme court, the supreme court shall have general superintendence over all courts in the state. Such general superintending power shall be exercised by the chief justice in accordance with rules promulgated by the supreme court."

The Superintendence Rules are binding on the courts so long as they are consistent with statutes and other governing court rules. The limitations on case assignments and transfers are derived from C. P. Sup. R. 4, rather than any constitutional or statutory language. Before adoption of that rule, each local court arranged case assignments and transfers in any manner that seemed practical to the judges in that court.

C. P. Sup. R. 4 should not be read to mean that a case can never be transferred from the original assigned judge, nor that only the original assigned judge has authority to take action under any circumstances. The rule itself authorizes action on "preliminary matters, including requests for continuances" by the administrative judge of that court if the original assigned judge is "unavailable." But that authority should not be exercised by the administrative judge without a record notation of the need for action by the administrative judge in the place of the assigned judge.

Thus, in *Rosenberg* v. *Gattarello* (1976), 49 Ohio App. 2d 87, at pages 92-93 [3 O.O.3d 151], this court ruled that the administrative judge lacked authority to grant leave for the filing of an untimely compulsory counterclaim, without a record showing why the assigned judge was unavailable and why there was need for action during the anticipated unavailability:

"We now turn to the first issue of whether or not the administrative judge of a division of a common pleas court has authority to rule on preliminary matters in a case assigned to a trial judge under the personal docket system. The appellant argues that through custom and usage the administrative judge here had concurrent authority with the assigned judge to grant his motion for leave to file an untimely counterclaim. This argument is not valid. Ohio courts are governed not by custom and usage but by the Rules of Superintendence of the Ohio Supreme Court promulgated under authority of the Ohio Constitution, Article IV, Section 5. Under the facts in this case, we hold that the administrative judge did not have authority to rule on the motion for leave under Civil Rule 13(F)."

The *Rosenberg* decision, at pages 93-94, further describes the administrative judge's authority:

"The administrative judge merely has authority and responsibility for and con-

trol over the administration, docket and calendar of the division. He does not have authority and responsibility for determining issues and proceedings in cases. These must be submitted for disposition to the judge to whom the case has been assigned with the exception of preliminary matters where the trial judge is unavailable and a delay in ruling on the matters until he is available would be prejudicial.

"The movant before the administrative judge has an affirmative duty to demonstrate in the record that the assigned judge is not available to rule on said matter and that a delay in ruling until he his [*sic*] available would be prejudicial. This condition precedent must be complied with before the administrative judge has authority to rule on any preliminary matter. Until a showing of unavailability is made, the assigned judge has the exclusive authority to rule on preliminary matters.

"The record in this case does not demonstrate that the assigned judge was unavailable to rule on the motion for leave to file a counterclaim, nor does it show that a delay in ruling until the trial judge was available would have been prejudicial. Consequently, since the administrative judge did not have authority to grant the motion, the order granting said motion was null and void. * * *" (Footnote omitted.)

Additionally, case transfers after a trial is commenced or concluded are governed by Civ. R. 63 and Crim. R. 25, each of which derives its constitutional base from Section 5(B), Article IV of the Ohio Constitution. That Civil Rule and that Criminal Rule allow the administrative judge, or the Chief Justice of the Ohio Supreme Court in the instance of a single-judge division, to designate a replacement judge when the assigned judge "is unable to proceed with the trial" or is "unable to perform the duties of the court after a verdict." Here again, reassignment is permitted only where there is a record showing of the assigned judge's inability to act.

Thus, in *Beatty* v. *Alston* (1975), 43 Ohio St. 2d 126 [72 O.O.2d 70], at page 127, certiorari denied (1975), 423 U.S. 1000, the Supreme Court ruled that sentence could not be imposed by a judge other than the assigned judge who presided over the trial unless the assigned judge is shown to be unable to act:

"This rule inferentially commands that unless unable to do so, the judge who presided at a criminal trial must also preside at post-conviction proceedings, including sentencing. * * *"

Therefore, the court held in *Beatty* that the assigned judge, who was available when another judge sentenced the defendant, acted properly by vacating that sentence and imposing his own harsher penalty. By contrast, this court ruled in *State* v. *Blythewood* (1978), 60 Ohio App. 2d 300 [14 O.O.3d 262], that the administrative judge could designate himself to rule on a shock probation motion, where the assigned judge who accepted a guilty plea and imposed sentence was shown on the record to be ill and unavailable for timely action on the motion.

In addition to the previously stated authority for case transfers, C. P. Sup. R. 3(B) impliedly permits the administrative judge to make case reassignments for good cause:

"The administrative judge shall be the presiding officer of his division and *shall have full responsibility for and control over the administration, docket and calendar of the division which he serves. He shall cause cases to be assigned to the judges within the division* and shall require such reports from each judge concerning the status of assigned cases as he may require *to assist him in discharging his overall responsibility for the observance of these superintendence rules and for the termination of cases in his division without undue delay.*" (Emphasis added.)

There are many circumstances in

which reassignment is appropriate, if not essential, in the interest of justice. Those situations include the recusal or disqualification of the assigned judge, protracted illness or absence of the assigned judge, exigent circumstances created by temporary absence or docket congestion for the assigned judge and an immediate need for action in the case.

However, the administrative judge's broad power of docket control and case assignment in C. P. Sup. R. 3 must be read together with the assignment system prescribed by C. P. Sup. R. 4 and the related provisions in Civ. R. 63 and Crim. R. 25. In view of the language of those rules and earlier case interpretations, we hold that reassignment of any case must be accompanied by a journal entry executed by the administrative judge which states a justifiable reason for transferring responsibility for the case to another judge.[3] Absent such an entry, the judge assuming to act has no authority and his rulings are voidable on timely objection by any party.

While at least one earlier decision described defective rulings resulting from unauthorized assignments as void, we believe they are more properly considered as voidable.[4] Absent an affirmative showing of bad faith or fraud in an assignment, there is no due process issue presented by reassignments. Rather, transfers violate governing procedural rules if the record does not show they have been made by the proper authority with a proper reason.

Like other procedural irregularities, their impropriety must be asserted in a timely fashion, or any objection is waived. Compare, e.g., Evid. R. 103 (evidentiary objections required), Civ. R. 51(A) (objection to civil jury charge required), Crim. R. 30 (objection to criminal jury charge re-

quired). A party cannot await the decision with knowledge of the procedural irregularity before choosing to object to the defect if the decision is unfavorable.

The waivable nature of error based on irregular transfers of the case was specifically applied in *Bowman* v. *Alvis* (1950), 88 Ohio App. 229 [44 O.O. 389]. In that criminal case, a new judge was substituted in the middle of the trial when the original trial judge became ill, but the original judge decided a motion for new trial after recovering from that illness. The record did not show that either judge was familiar with details of the part of the trial conducted by the other judge. Although the record did not show express consent by the defendant to those substitutions, the record failed to show any objection. Therefore, the appellate court concluded:

"* * * In the absence of an affirmative showing to the contrary, it may be presumed that the accused consented to the substitution of judges by the continuation of the trial to its completion. * * *" *Id.* at 232. See, also, *People* v. *Casselman* (1909), 10 Cal. App. 234, 101 P. 693; *Burrage* v. *State* (1912), 101 Miss. 598, 58 So. 217; *People* v. *Henderson* (1865), 28 Cal. 465.

Citing *United States* v. *Valante* (1924), 264 U.S. 563, the Ohio court ruled in *Bowman* v. *Alvis, supra* (88 Ohio App.), at page 236:

"* * * if any error existed in the substitution of one judge for another, such substitution did not go to the jurisdiction of the court or render the judgment void and that review should have been sought by writ of error, and that a remedy by habeas corpus is not available."

Certainly, the procedural infirmity

---

[3] When the administrative judge is himself unavailable, there may well be a valid local procedure for a designated acting administrative judge to act on such matters.

[4] The attempted exercise of jurisdiction by

someone who was not authorized to act as a judge in any circumstances might well constitute void action. However, all persons acting here were regularly serving as qualified judges of that court.

from improper case assignment has less constitutional concern in civil than in criminal cases.

Therefore, any party objecting to reassignment must raise that objection at the first opportunity to do so. If the party has knowledge of the transfer with sufficient time to object before the new judge takes any action, that party waives any objection to the transfer by failing to raise that issue on the record before the action is taken. If the party first learns about the transfer after action is taken by the new judge, the party waives any objection to the transfer by failing to raise that issue within a reasonable time thereafter. The definition of a reasonable time may well be controlled by time limits for motions for rehearing, reconsideration, or a new trial.

Applying these precepts to the present case we observe that none of the reassignments from the original assigned judge are justified by the record. There was no record entry of a transfer to the second or third judges, and no reason was given for the record entry transferring the case to the fourth judge. However, there was no timely objection to the transfer to the second judge or his consideration of any issues. Indeed, the second judge's divorce judgment was the subject of an appeal to this court without any challenge to his authority to hear and decide the issues. Therefore, the validity of this divorce judgment is the law of the case, even if any objection to that judge's individual authority to act on that matter had not been waived long ago. *Mingo Junction* v. *Birch* (1935), 52 Ohio App. 201 [6 O.O. 299]. Having failed to claim that error in the first appeal, defendant waived that error for that appeal and any subsequent appeal based on the same record.

The motions which are the subject of these appeals should be decided by the original assigned judge unless the administrative judge transfers the case for a sound reason and evidences that action by

a proper journal entry. The case is therefore remanded for further proceedings consistent with this opinion at the costs of Bertine M. Berger.

*Judgment accordingly.*

PRYATEL, P.J., and PATTON, J., concur.