OPINION
Appellant Cuyahoga County Department of Children and Family Services ("CCDCFS") appeals from the judgment of the Cuyahoga County Court of Common Pleas, Juvenile Division, which denied its motion for permanent custody of Elizebeth Torres and granted legal custody to Maribel and Mohammed Hashash. Appellant contends that the trial court both lacked authority to issue the order and abused its discretion in its denial of the motion where the evidence met all the requirements for granting permanent custody. We find no reversible error and affirm the judgment of the Juvenile Court.
Elizebeth Torres, the eleventh child of Lisette Garcia, was born July 11, 1995. By arrangement of Richard Townsend, a caseworker with CCDCFS, Elizebeth was released on July 13 from the hospital directly to the care of Lisette Garcia's sister Maribel Hashash and her husband Mohammad. A dependency and neglect complaint was filed in Juvenile Court on July 20, 1995 and on July 25, Elizebeth was committed to the emergency custody of CCDCFS. On October 16, 1995, Elizebeth was adjudged neglected and committed to the temporary custody of CCDCFS. Six-month extensions of temporary custody were granted both on June 24, 1996 and December 2, 1996. Additionally, on December 2, 1996 an emergency order was obtained to have the child moved to a new relative foster home "due to drug activity by current rel.f.f. [relative foster father]." On December 9, 1996, Elizebeth was removed from Hashashes' home by a CCDCFS social worker accompanied by two Cleveland police officers and placed with a cousin of both Lisette Garcia and Maribel Hashash, Marilyn Rodriguez and her husband John. On April 2, 1997, CCDCFS moved for permanent custody of Elizebeth.
Preliminary hearings were held wherein both current and former foster parents were referred for psychological evaluation at the Juvenile Court Diagnostic Clinic; Marilyn and John Rodriguez, current foster parents, were made party to the proceedings; and, visitation was enlarged for Maribel and Mohammed Hashash, the former foster parents. At a preliminary hearing held February 10, 1998, the trial court announced from the bench that due to a potential appearance of conflict, he would recuse himself from the matter.
Further, the court ordered that "the visitation schedule set forth in the court's journal entry dated November 10, 1997 shall continue in effect without fail. The court finds that since the child has an amiable relationship with both the Rodriguezes and the Hashash[e]s, any denial by the Rodriguezes of visitations of the child with the Hashash Eels will be considered by the court to constitute a substantial abuse of the child." This entry of recusaJ. was journalized on February 23, 1998.
The following week, on March 2, the court, after determining that no conflict remained, modified its entry of February 23, deleted its entry of recusal and set the matter for hearing to commence March 19, 1998. On April 2, 1998, the court was apprised that the Rodriguezes, on the advice of counsel, had failed to permit visitations to take place. On April 10, in an effort to prevent further interference with the progress of the case, the trial court journalized its order to hold in abeyance the formal hearing for contempt against counsel for the Rodriguezes and CCDCFS for violation of the court ordered visitations whereby the Hashashes were denied the weekend visitations of Elizebeth until the merits of the case are completed. Subsequently, trial went forward on April 29, 30 and May 1, 1998 on CCDCFS' motion for permanent custody and on Maribel and Mohammed Hashashes' application for legal custody of Elizebeth. The evidence adduced at the hearing significant to the issues addressed in this appeal is as follows.
In support of its application for permanent custody CCDCFS presented the testimony of Diane Chevako, licensed social worker with CCDCFS, who testified that she received the case in August 1996. She then familiarized herself with the matter which originated in 1984 with Torres' oldest child. She noted that none of the mother's eleven children are in her care. At the time of Elizebeth's birth a case plan for her parents was in place but the mother and father had never participated in any services. Neither parent has ever seen Elizebeth and Ms. Chevako opined that neither parent will ever be able to provide care for Elizebeth. She testified that she conducted a home study of the Hashash family, which was fine, but the criminal background check on Mr. Hashash revealed drug-related charges. This prompted her to call a "staffing" where the parties discuss the situation to decide whether Elizebeth could stay with the Hashashes due to departmental policy. Although she said she notified the Hashashes of the staffing set for 9:00 a.m. on December 9, she said they failed to appear. The staffing decision was to remove Elizebeth due to the drug history of Mr. Hashash. The staffing report indicated that "Mr. Hashash has an extensive history of drug involved crimes. He has been convicted of drug trafficking, drug possession, drug use, harassment, etc." Elizebeth was placed with the Rodriguezes that day. The Rodriguezes had three of Elizebeth's siblings living with them at that time. Ms. Chevako observed that Elizebeth was very enmeshed with the Rodriguezes and her siblings. In her written report to the Juvenile Court on July 24, 1997, she opined that Elizebeth enjoyed her visits with the Hashash family, observed no adverse effects and "is equally comfortable with both families."
Dr. John Konieczny testified that he interviewed both families and was able to conclude that both families were able to provide adequate parenting and both families were closely bonded to Elizebeth. In his report, Dr. Konieczny noted that both home settings were appropriate for Elizebeth; she appeared comfortable and engaged easily with both sets of foster parents. In his opinion, either couple could provide adequate care and parenting for her. His report indicated that her best interest would be enhanced were she to be placed in the care of the Rodriguezes due to the opportunity to be raised with siblings. He strongly recommended that the "non-custodial" couple be considered for liberal visitation and that consideration be given to her continued contact with her siblings. However, on cross-examination Dr. Konieczny indicated that if the Rodriguezes had custody of Elizebeth and would not allow her to visit the Hashashes it would change his recommendation, concluding that it would be detrimental to Elizebeth if she were cut off from the Hashashes. He believed it would be in Elizebeth's best interest to have an on-going relationship with both families. Upon questioning by the court, Dr. Konieczny stated in his opinion that if the question became Elizebeth could live with the Rodriguezes, with her brothers and sister and never see the Hashashes, versus she could live with the Hashashes and still have contact with her siblings who live with the Rodriguezes, then the decision would go to placement with the Hashashes.
John Rodriguez testified that his family hopes and prays that Elizebeth is with them on a permanent basis because she has stability and loves them like a family. He said if his family was granted possession of Elizebeth he would only want supervised visits for the Hashashes with a caseworker because he is "uncomfortable" with Mr. Hashash. He testified that he believed that although the judge extended Elizebeth's visitations with the Hashashes after conferring with his attorney, he believed that once the judge had recused himself from the matter then the visitation order did not have to be followed. He said it did not occur to him that the Hashashes would miss seeing Elizebeth or that Elizebeth would miss seeing them.
Maribel and Mohammad Hashash testified in support of their application for legal custody. They described the care they gave to Elizebeth during her first seventeen months. Because Elizebeth tested positive for cocaine at birth, in the early months they had to hold her for hours each day because she would shake and cry. They sought medical care and information as needed without permission from CCDCPS. While in their care, Elizebeth had the opportunity to visit with her other siblings, Juana and Juho, and with her extended family members, including grandmothers, grandfathers, aunts and uncles. However, after she was placed with the Rodriguezes, she was not permitted to meet with the other siblings. The Hashashes testified that they would encourage Elizebeth to maintain extensive contact with her four siblings that live with the Rodriguezes.
The 1991 criminal record of Mr. Hashash, which caused CCDCFS to remove Elizebeth from their care, consisted of an admission of guilt to attempted drug abuse, a first degree misdemeanor and intimidation of a felony of the third degree for which he was sentenced to concurrent sentences for a term totaling one year, suspended. He was placed on one year probation.
The recommendation of the guardian ad litem indicates that both homes are adequate and Elizebeth is well bonded with both families; GAL's concern is whether there will be "ongoing visits between Rodriguez and Hashash, with/for Elizebeth." The GAL concurs with the clinical evaluation that Elizebeth have continued contact with each family, or liberal visitation. The GAL concluded "[o]n the basis of trying a guarantee contact for Elizebeth between the families, I suggest custody to the Hash Hash [sic] family. However, I have no objection to custody with Rodriguez."
On July 30, 1998, the trial court denied CCDCFS' application for permanent custody and granted legal custody of Elizebeth to Maribel and Mohammed Hashash; ordered Elizebeth to be delivered to the Hashashes; and ordered a visitation plan to be submitted to the court. On August 18, 1998, hearing was held to determine visitation. Mrs. Rodriguez indicated that they did not intend to visit Elizebeth. On August 20, 1998, the court entered its judgment and opinion. CCDCFS timely appealed and advances two assignments of error for our review.
 I. THE TRIAL COURT ERRED IN ISSUING AN ORDER PURPORTING TO VACATE ITS EARLIER ORDER OF RECUSAL AND IN ISSUING ANY OTHER ORDERS AFTER ITS ORDER OF RECUSAL.
 II. THE TRIAL COURT ERRED IN DENYING THE CUYAHOGA COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES' MOTION FOR PERMANENT CUSTODY OF ELIZEBETH TORRES AND IN GRANTING LEGAL CUSTODY OF ELIZEBETH TORRES TO MARIBEL AND MOHAMMED HASHASH.
In its first assigned error, appellant complains that the trial court lacked authority to issue any orders in this case after it issued the order wherein it recused itself. Specifically, appellants contend that the order issued on March 2, 1998 purporting to vacate the order of recusal which was journalized February 23, 1998 was void and all subsequent orders issued by the trial judge were without authority.
First, we reject appellant's request that this court analogize the actions taken by the trial court in vacating his recusal to the circumstances in State ex rel. Stern v. Mascio (1998),81 Ohio St.3d 297 and in finding the orders void. In Mascio, the judge disqualified himself, as required under Canon 3 (E) (1) (c) of the Code of Judicial Conduct, on February 12, 1998 because his son represented a party in a civil matter before him. Despite disqualifying himself and despite an affidavit of disqualification pursuant to R.C. 2701.03 by other counsel, Judge Mascio ordered counsel to submit case citations and, a week later, found counsel in contempt. Counsel filed an action for writ of prohibition. The supreme court issued the writ finding that Judge Mascio lacked jurisdiction, reasoning that R.C.2701.03 provides that the filing of an affidavit of disqualification deprives the judge against whom the affidavit was filed of any authority to preside in the proceeding until the Chief Justice rules upon it.
We find those circumstances to be sufficiently distinguishable from the matter before us as to have no relevance here. In this case, the trial court's recusal went to matters outside the merits of the case itself. No affidavit of disqualification had been filed and the reason for recusal no longer existed.
We acknowledge appellant's assessment of the case law presented which finds that a judge has no authority to enter a ruling on a case after the reassignment of a case by the administrative judge. See Caplan v. Caplan (Apr. 18, 1985), Cuyahoga App. No. 48979, unreported. However, appellant, without case law in support, requests this court to extend the proposition to a judge who recuses himself from a pending matter but no reassignment of the case has yet occurred. Appellant, in reliance on Justice v.City of Columbus (Nov. 14, 1991), Franklin App. No. 91 AP-675, unreported, asserts in such circumstance only the administrative judge has authority to enter rulings. Even if we accept this reasoning, we find appellant's first assignment of error to be without merit.
In Berger v. Berger (1981), 3 Ohio App.3d 125, this court determined that defective rulings resulting from unauthorized assignments may properly be considered voidable. Id. at 130. If a trial judge enters an order before he has been properly assigned to the case, that order is voidable on timely objection by any party. Howard v. East Ohio Gas Co. (Mar. 21, 1985), Cuyahoga App. No. 48725, unreported.
Here, the trial court vacated its self-disqualification which was as yet unacted upon by the administrative judge. Thus, even if we conclude that the trial judge had no authority to vacate what he perceived to be an interlocutory order, the order to vacate could be properly be considered voidable. But, as we have stated before, an order is only voidable upon timely objection.
Recently this court in Sagen v. Thrower (Apr. 8, 1999), Cuyahoga App. No. 73954, unreported, stated:
 [g]enerally a litigant who has the opportunity to raise a claim in the trial court but fails to do so waives the right to raise that claim on appeal. Belvedere Condominium Unit Owner' Assn. R.E.Roark Cos., Inc. (1993), 67 Ohio St.3d 274, 279, 617 N.E.2d 1075; Mark v. Mellott Mfg. Co., Inc. (1995), 106 Ohio App.3d 571, 589, 666 N.E.2d 631. Furthermore, in Berger v. Berger (1981), 3 Ohio App.3d 125, 443 N.E.2d 1375, stated:
 Any party objecting to reassignment must raise that objection at the first opportunity to do so. If the party has knowledge of the transfer with sufficient time to object before the new judge takes any action, that party waives any objection to the transfer by failing to raise that issue on the record before the action is taken.
The record before us demonstrates that appellant was aware of the trial court's vacation of its entry of recusal. There is nothing in the record to indicate appellant's objection to the trial court's proceeding in the matter. Therefore, we find appellant's failure to object to having the matter heard by the trial court originally assigned precludes it from advancing this challenge on appeal. Appellant's first assignment of error is not well taken.
In its second assignment of error, appellant contends that the trial court abused its discretion when it treated the hearing on its motion for permanent custody as a hearing between two interested families for legal custody. Specifically, appellant contends that the court interfered with the jurisdiction of the Probate Court and failed to provide Elizebeth the opportunity for the permanency of adoption.
On review, an appellate court must determine if the evidence is sufficient to support a firm belief or conviction that a particular fact has been established or proved, keeping in mind that "the discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." Miller v. Miller
(1988), 37 Ohio St.3d 71, 74. An appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence going to all the essential elements of the case. In re Stackhouse (Mar. 11, 1991), Athens App. No. 1456, unreported. This standard of review is used by appellate courts in reviewing awards of permanent custody of children to children services agencies. See Jones v. Lucas CountyChildren Services Board (1988), 46 Ohio App.3d 85, 86,546 N.E.2d 471; In re Lay (1987) 43 Ohio App.3d 78, 80, 539 N.E.2d 664; In re Wright (Oct. 4, 1990), Washington App. No. 90 CA 10, unreported. In Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,80, 461 N.E.2d 1273, 1276, the court reviewed the principle that reviewing courts may not re-weigh the evidence, but must affirm judgments supported by competent, credible evidence:
 "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." See C.E. Morris Co. v. Foley Construction Co.
(1978), 54 Ohio St.2d 279, supra.
Jurisdiction of the Juvenile Court is found in R.C. 2151.23
which provides in relevant part:
 (F) (1) The juvenile court shall exercise its jurisdiction in child custody matters in accordance with sections 3109.04, 3109.21 to 3109.36 * * *.
Further R.C. 2151.414 provides:
 (B) The court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 (1) The child is not abandoned or orphaned and the child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents[.]
* * *
 (D) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A) (4) of section 2151.353
[2151.35.3] of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:
 (1) The interaction and interrelationship of the child with his parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through his guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
Under the former version of R.C. 2151.414 (D), a trial court was also expressly required to consider "the reasonable probability of the child being adopted, whether an adoptive placement would positively benefit the child, and whether a grant of permanent custody would facilitate an adoption." Under the current version of R.C. 2151.414 (D), which became effective September 18, 1996, this factor has been deleted from the list of express factors that a trial court must consider in arriving at a "best interest" determination.
In this matter, the trial court, after considering the recommendation of the guardian ad litem, the social worker, the psychologist consultant of the Juvenile Court Diaganostic Clinic, found that a legally secure placement for Elizebeth could be achieved without a grant of permanent custody to the agency. R.C.2151.414 (D) (4). The court further found that it is in Elizebeth's best interest to be placed in the legal custody of the Hashashes upon consideration of her interaction and interrelationship with her parents, siblings, relatives, foster parents and those persons who may significantly affect her.
The court found that the "advantage of Elizebeth being raised with her siblings, although significant, is not controlling in this case, since the evidence demonstrates that this advantage to her would be outweighed by the Rodriguez [es]' denial of visitation between her and the Hashash[e]s, who come within the category of any other person who may significantly affect the child' under R.C. 2151.414 (d) (1)." In addition, the court reasoned that legal custody to the Hashashes was in Elizebeth's best interest because they were more likely to honor and facilitate visitation and companionship rights approved by the court." R.C. 3109.04 (F) (1) (b) (f)
We find that competent and credible evidence supports the conclusions of the trial court in its denial of appellant's motion for permanent custody of Elizebeth and its grant of legal custody to the Hashashes. Accordingly, appellant's second assignment of error is without merit.
Judgment affirmed.
It is ordered that appellee recover of appellant her costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Juvenile Court Division of Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
BLACKMON, J. and KILBANE, J., CONCUR.
 __________________________________ TIMOTHY E. McMONAGLE PRESIDING JUDGE