OPINION
{¶ 1} Defendant-appellant, Sherry L. Sizemore, appeals from a judgment of the Butler County Court of Common Pleas sentencing her to 36 months in prison for violating the terms of her community control.
 {¶ 2} On February 20, 2003, appellant was indicted by the Butler County Grand Jury on one count of aggravated trafficking in drugs in violation of R.C. 2925.03(A)(1), a felony of the fourth degree ("Count One"); one count of aggravated possession of drugs in violation of R.C. 2925.11(A), a felony of the fifth degree ("Count Two"); and one count of complicity to aggravated drug trafficking in violation of R.C. 2923.03(A)(2) and2925.03(A), a felony of third degree ("Count Three"). The charges arose from allegations that appellant, along with her sister, Paula Sizemore, sold OxyContin tablets to an undercover agent of the Butler County Sheriff's Department.
 {¶ 3} On November 6, 2003, appellant entered into a plea bargain with the state in which appellant agreed to plead guilty to the charge of aggravated drug trafficking contained in Count One, and to a lesser included offense of the charge of complicity to aggravated drug trafficking contained in Count Three of the indictment, which reduced that charge to a felony of the fourth degree. In return, the state agreed to dismiss Count Two of the indictment. The trial court, with Judge Keith Spaeth presiding, accepted appellant's guilty pleas and found her guilty of those offenses.
 {¶ 4} On December 18, 2003, the trial court sentenced appellant to five years of community control and ordered her to "enter into and comply with all the terms, conditions and requirements" of the Substance Abuse/Mental Illness ("SAMI") Program which is operated by Judge Michael Sage. The trial court also suspended appellant's driver's license for a period of three years. The trial court informed appellant that if she violated the terms, conditions and requirements of her community control, she could be sentenced to serve 18 months in prison on Count One, another 18 months in prison on Count Three, and ordered to serve the 18-month sentences consecutively, for a total of 36 months in prison. When the trial court asked appellant if she understood this, appellant answered in the affirmative.
 {¶ 5} On February 4, 2004, the trial court, with Judge Sage (the "SAMI" court judge) presiding, issued an entry granting appellant limited driving privileges.
 {¶ 6} On February 18, 2005, the probation department filed a report with the Butler County Court of Common Pleas alleging that appellant had violated the terms of her community control by having a Browning magazine with nine rounds of .22 caliber ammunition at her residence, and by having several empty bottles of prescription medication at her residence, which she had failed to report to the probation department, as required under the terms of her community control. The empty bottles apparently contained several different types of medications, including OxyContin and Vicodin.
 {¶ 7} After holding a probable cause hearing on the alleged violations, a magistrate found that there was probable cause to believe that appellant had violated the terms of her community control, and scheduled the matter for a revocation of community control hearing in the trial court. The magistrate also found appellant to be indigent and appointed counsel to represent her at the revocation hearing.
 {¶ 8} On March 9, 2005, the trial court, with Judge Sage presiding, held a revocation of community control hearing. Appellant stipulated to having violated three of the rules governing her community control. After finding that appellant had violated the terms and conditions of her community control, the trial court revoked same, and sentenced appellant to serve 18 months in prison as to Count One and 18 months in prison as to Count Three — the maximum sentences the trial court could impose for those offenses, which were both felonies of the fourth degree. See R.C. 2929.14(A)(4) The trial court imposed the longest prison sentences on appellant for her convictions on Counts One and Three after finding that she had committed one of the worst forms of the offense. See R.C. 2929.14(C). The trial court also ordered appellant to serve the sentences consecutively after finding that consecutive terms were not "disproportionate," and "were needed to protect the public" and "to punish" appellant. See R.C. 2929.14(E)(4).
 {¶ 9} Appellant now appeals, assigning the following as error:
 {¶ 10} Assignment of Error No. 1:
 {¶ 11} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BECAUSE IT DID NOT HAVE THE AUTHORITY TO VIOLATE HER PROBATION OR TO IMPOSE THE SENTENCE UPON HER."
 {¶ 12} Appellant argues that Judge Sage lacked jurisdiction under Superintendence Rule ("Sup.R.") 36[1] to conduct the community control violation proceedings or to impose sentence on her for violating her community control because there is no journal entry or other indication in the record showing that the case was properly transferred from Judge Spaeth to Judge Sage, nor was there any reason or justification given for the transfer. We disagree with this argument.
 {¶ 13} At appellant's original sentencing hearing in December 2003, Judge Spaeth informed appellant that the SAMI program is operated through Judge Sage. Judge Spaeth also informed appellant that he "believe[d] this case will be transferred to Judge Sage." When Judge Spaeth informed appellant that her driving privileges were suspended for a period of three years, he also informed her that she could discuss obtaining early limited driving privileges with Judge Sage. And when appellant sought early limited driving privileges in February 2004, she sought and obtained them from Judge Sage.
 {¶ 14} Furthermore, when Judge Spaeth discussed with appellant the consequences of her failing to abide by the terms of her community control, he informed appellant that either he, Judge Sage, or some other judge in the trial court could sentence her to prison. In short, Judge Spaeth made it clear to appellant that her case was probably going to be transferred to Judge Sage, and, in fact, it was. Appellant never objected to the transfer at any point in the proceedings held in the trial court. Consequently, she has waived this issue for purposes of review. See, generally, Berger v. Berger (1981), 3 Ohio App.3d 125, 131
(any party objecting to the reassignment of a case must raise the objection at the earliest opportunity, or the issue is deemed waived).[2]
 {¶ 15} Appellant's first assignment of error is overruled.
 {¶ 16} Assignment of Error No. 2:
 {¶ 17} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANTA-PPELLANT WHEN IT DID NOT PERMIT DEFENDANT TO BE REPRESENTED BY RETAINED COUNSEL OF HER CHOICE."
 {¶ 18} Appellant argues that the trial court erred in not allowing her to be represented by her retained counsel, and in requiring her, instead, to be represented by appointed counsel. We disagree with this argument.
 {¶ 19} During the initial proceedings in which appellant received community control, appellant was represented by Attorney Dan Hurr, who appellant herself had apparently retained. After appellant was charged with violating the terms and conditions of her community control, appellant was determined to be indigent by the magistrate at the probable cause hearing. At this time, the magistrate appointed counsel, namely, Attorney Monica Spohn. However, five days after Spohn's appointment, Hurr filed, on appellant's behalf, a motion to set bond. Hurr never made another appearance in the case, and Spohn, alone, represented appellant throughout the remainder of the community control revocation proceedings.
 {¶ 20} Appellant essentially argues that because Hurr made an appearance in this case on her behalf (by filing a motion to set bond), the trial court was obligated to inquire whether she was being represented by the attorney of her choice. We disagree with this argument. Appellant never told the trial court that she was not being represented by the attorney of her choice. Furthermore, it appears from the record that appellant was simply unable to afford privately retained counsel at the time she was alleged to have violated the terms and conditions of her community control. In fact, the magistrate made a finding to that effect in these proceedings.
 {¶ 21} As for Hurr's brief appearance in the proceedings to revoke appellant's community control, it is not clear from the record why Hurr did this, but it is clear that Hurr never made any other appearance during the proceedings to revoke appellant's community control. Furthermore, there is no indication in the record that appellant informed the trial court that she wanted to be represented by Hurr rather than Spohn and that she could afford to hire her own counsel. In fact, the record indicates that she was not able to afford privately retained counsel.
 {¶ 22} In the absence of any evidence at the community control revocation proceedings that appellant wanted to be represented by a privately retained lawyer (or that she was even able to afford such a lawyer), the trial court did not err in failing to inquire of appellant if she was being represented by the counsel of her choice.
 {¶ 23} Appellant's second assignment of error is overruled.
 {¶ 24} Assignment of Error No. 3:
 {¶ 25} "DEFENDANT-APPELLANT RECEIVED THE INEFFECTIVE ASSISTANCE OF COUNSEL."
 {¶ 26} Appellant argues that her trial counsel provided her with constitutionally ineffective assistance of counsel. We disagree with this argument.
 {¶ 27} In order for a defendant to prevail on an ineffective assistance of counsel claim, a criminal defendant must make the two-pronged showing outlined in Strickland v. Washington
(1984), 466 U.S. 668, 104 S.Ct. 2052. First, the defendant must show that his counsel's performance was deficient ("performance prong"). Id. at 687. This requires the defendant to show that his counsel's performance fell below an objective standard of reasonableness. Id. at 688. Second, the defendant must show that he was prejudiced by that deficient performance to the extent that it deprived him of a fair trial ("prejudice prong"). Id. at 687. This requires showing that there is a reasonable probability that, but for his counsel's deficient performance, the result of the proceedings would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. A failure to make either showing will doom a defendant's ineffective assistance claim. See id. at 697.
 {¶ 28} In this case, appellant has failed to make a sufficient showing with respect to either prong of theStrickland standard. In particular, we note that appellant herself admitted that she had violated the terms of her community control. In effect, she "threw herself on the mercy of the court" at the community control violation proceedings. The fact that the trial court imposed the maximum sentences on appellant and ordered them to be served consecutively is not surprising in light of the facts of this case.
 {¶ 29} The record shows that appellant was originally sentenced to community control after she was convicted of selling OxyContin. When she was on community control, she began selling OxyContin again. Appellant obtained the drug by obtaining prescriptions from various physicians. She obtained the prescriptions free of charge, as a result of public assistance. There was testimony from appellant's probation officer who estimated that appellant was earning "possibly $5,000 per month" from the sale of the OxyContin. Under these circumstances, we conclude that appellant has failed to demonstrate her claim of constitutionally ineffective assistance of counsel.
 {¶ 30} Appellant's third assignment of error is overruled.
 {¶ 31} Assignment of Error No. 4:
 {¶ 32} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANTA-PPELLANT WHEN IT SENTENCED HER TO CONSECUTIVE SENTENCES IN PRISON."
 {¶ 33} Appellant argues that the trial court erred in imposing consecutive sentences on her after making the findings set forth in R.C. 2929.14(E)(4). She also argues that the trial court's decision to impose consecutive sentences on her violates the principles set forth in Blakely v. Washington (2004),542 U.S. 296, 124 S.Ct. 2531.
 {¶ 34} After this case had been submitted for decision, the Ohio Supreme Court issued its decision in State v. Foster,
___ Ohio St.3d ___, 2006-Ohio-856. The Foster court held that certain sections of Ohio's sentencing code violate theSixth Amendment of the United States Constitution and the principles contained in Apprendi v. New Jersey (2000), 530 U.S. 466,120 S.Ct. 2348, and Blakely v. Washington (2004), 542 U.S. 296,124 S.Ct. 2531. Foster at paragraphs one, three and five of the syllabus. Among the sections the Foster court found unconstitutional was R.C. 2929.14(E)(4). Id. at paragraph three of the syllabus. R.C. 2929.14(E)(4) required a sentencing court to make certain judicial findings before imposing consecutive sentences on an offender.
 {¶ 35} The Foster court noted that under Blakely and its progeny, "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." Foster at ¶ 82, quoting United States v.Booker (2005), 543 U.S. 220, 244, 125 S.Ct. 738. Consequently, the Foster court concluded that R.C. 2929.14(E)(4) is unconstitutional under Apprendi and Blakely because that section "require[s] judicial finding of facts not proven to a jury beyond a reasonable doubt or admitted by the defendant before imposition of consecutive sentences[.]" Id. at ¶ 83.
 {¶ 36} The Foster court determined that the sections of Ohio's sentencing code that violate the Sixth Amendment and the principles in Apprendi and Blakely, including R.C.2929.14(E)(4), can be "severed" or excised from the sentencing code. Foster at paragraphs two, four and six of the syllabus. The Foster court found that R.C. 2929.14(E) can be "severed" or excised from Ohio's sentencing code, and that "[a]fter the severance, judicial factfinding is not required before imposition of consecutive prison terms." Id. at paragraph four of the syllabus.
 {¶ 37} The Foster court stated that any case "pending on direct review must be remanded to trial courts for new sentencing hearings not inconsistent with this opinion." Id. at ¶ 104. TheFoster court also stated that while a defendant is entitled to a new sentencing hearing, the defendant "may stipulate to the sentencing court acting on the record before it." Id. at ¶ 105.
 {¶ 38} Pursuant to Foster, the common pleas court has full discretion to impose a prison sentence within the statutory range, and is no longer required to make findings or give reasons for imposing maximum, consecutive, or more than the minimum sentences. Foster at paragraph seven of the syllabus. Nevertheless, in exercising its discretion, the sentencing court "must carefully consider the statutes that apply to every felony case." State v. Mathis, ___ Ohio St.3d ___, 2006-Ohio-855, at ¶ 39. The portions of the sentencing code to be considered "include R.C. 2929.11, which specifies the purposes of sentencing, and R.C. 2929.12, which provides guidance in considering factors relating to the seriousness of the offense and recidivism of the offender." Id. at ¶ 39. Additionally, "the sentencing court must be guided by statutes that are specific to the case itself." Id.
 {¶ 39} Based on Foster, we sustain appellant's fourth assignment of error to the extent indicated. On remand, the trial court will resentence appellant on the offenses of which she has been convicted, pursuant to the principles set forth in Foster.
 {¶ 40} The trial court's judgment is reversed, and this matter is remanded for re-sentencing in accordance with this opinion and the law of this state.
Powell, P.J., and Bressler, J., concur.
[1] {¶ a.} Sup.R. 36(B)(1) states, in pertinent part:
{¶ b.} "As used in these rules, `individual assignment system' means the system in which, upon the filing in or transfer to the court or a division of the court, a case immediately is assigned by lot to a judge of the division, who becomes primarily responsible for the determination of every issue and proceeding in the case until its termination. * * * The individual assignment system ensures all of the following:
{¶ c.} "(a) Judicial accountability for the processing of individual cases;
{¶ d.} "(b) Timely processing of cases through prompt judicial control over cases and the pace of litigation;
{¶ e.} "(c) Random assignment of cases to judges of the division through an objective and impartial system that ensures the equitable distribution of cases between or among the judges of the division."
[2] Berger's requirement that the administrative judge state a justifiable reason for transferring responsibility for a case from one judge to another was overruled in Brickman Sons, Inc.v. Natl. City Bank, 106 Ohio St.3d 30, 2005-Ohio-3559.