JOURNAL ENTRY AND OPINION
{¶ 1} La Centre, LLC, specifically defendant Michael Aerni, appeals from a judgment of the trial court which denied his motion for relief from judgment and refused to stay the execution of judgment pending appeal. Aerni claims these actions were in error and that the court further erred in failing to conduct an evidentiary hearing. He additionally assigns error in the administrative judge's refusal to transfer the case to the originally assigned judge. We affirm.
 {¶ 2} The record reveals that in 1996, Robert Lontkowski and Michael Aerni purchased Jubilee Catering Company, Inc. ("Jubilee Inc."). Shortly after purchasing the company, Jubilee Catering Company, Ltd. ("Jubilee Ltd.") was formed as the sole operating company while Jubilee, Inc. operated as a real estate holding company.
 {¶ 3} Lontkowski and Aerni then assembled a management team and formed three additional companies: (1) La Centre, LLC ("La Centre"), which owns the La Centre facility itself and the land upon which it sits; (2) Latitude Media Group, Inc. ("Latitude"), which owns the technology equipment at La Centre; and (3) La Office Plaza, LLC ("La Office"), which owns the Houlihan's building and six lots on Columbia Road adjacent to the La Centre office building.
 {¶ 4} In March 2000, the Ohio Carpenters' Pension Fund, ("Ohio Carpenters"), through its loan servicing agent, Leader Mortgage Company, LLC (now known as U.S. Bank Home Mortgage, a division of U.S. Bank, NA), loaned La Centre, La Office, Jubilee Catering, Robert Lontkowski and Michael Aerni (collectively referred to as "the parties") $8,875,000 to construct a banquet/conference/catering center and office tower in Westlake. The parties then executed a Cognovit Guaranty dated March 29, 2000, and a Confirmation of Cognovit Guarantee, dated May 24, 2001. Throughout the next several years, the parties continued to borrow additional funds and the original loan was restated to reflect these additional amounts and to also add Jubilee Ltd. as a borrower.
 {¶ 5} Effective February 1, 2003, La Centre, La Office, Jubilee Inc., Jubilee Ltd., Lontkowski and Aerni executed and delivered to U.S. Bank a Second Amended and Restated Loan Agreement for $33,000,000. These same parties then executed a Second Amended and Restated Cognovit Promissory Note for $33,000,000. Jubilee Inc., Lontkowski and Aerni also executed and delivered a Confirmation of Cognovit Guaranty to U.S. Bank. Jubilee Inc., Global Fare Inc. and Latitude executed and delivered a Cognovit Guarantee, guaranteeing all amounts owing under the second restated note.
 {¶ 6} On September 15, 2004, U.S. Bank assigned its interest in the Second Restated Note and all other loan documents to the Ohio Carpenters. Ohio Carpenters claimed that the parties defaulted under the terms of the Second Restated Note as they: (1) failed to make payments when due, (2) made delinquent monthly payments, and (3) failed to comply with the terms of the guarantees and Loan Documents. Because of this default, Ohio Carpenters accelerated payment and the full amount became due and payable.
 {¶ 7} On September 20, 2004, Ohio Carpenters filed a complaint on the Cognovit Note and Cognovit Guarantees and the case was randomly assigned to Judge John D. Sutula. The same day, Administrative Judge Richard McMonagle entered judgment against La Centre, Jubilee Inc., Jubilee Ltd., Global, Latitude, Lontkowski and Aerni, jointly and severally in the amount of $31,351,862.18. This amount included a principal balance of $28,701,300.57, plus interest at 12 percent per annum from August 31, 2004.
 {¶ 8} One week after judgment was entered, Aerni moved for relief from judgment under Civ.R. 60(B) and moved to stay execution. A hearing was held in October 2004, at which the trial court denied both motions for failure to allege a meritorious defense.
 {¶ 9} Two months later, the Ohio Carpenters and Lontkowski entered into a separate settlement agreement. The trial court then vacated the prior judgment entry against Lontkowski only and dismissed that claim with prejudice.
 {¶ 10} Aerni then filed two appeals: the first as case number 86597, based on the trial court's denial of his motion to stay the execution of judgment, and a second as case number 86789, based upon the court's denial of the motion to transfer the case to the originally assigned trial court judge. This court consolidated these cases for purposes of appeal and the consolidated assignments of error are set forth in the appendix to this opinion.
I. MOTION FOR RELIEF FROM JUDGMENT
 {¶ 11} In his first assignment of error, Aerni contends that the trial court erred in denying its motion for relief from judgment as it had meritorious defenses to present, including breach of fiduciary duty, tortious interference and fraud, and that his motion was made within a reasonable time. Since Aerni's second assignment of error regarding the trial court's failure to conduct an evidentiary hearing prior to denial of the motion for relief is interrelated, we address both assignments of error together.
 {¶ 12} When reviewing a decision granting or denying Civ.R. 60(B) relief, appellate courts apply an abuse of discretion standard. State ex rel. Russo v. Deters, 80 Ohio St.3d 152,153, 1997-Ohio-351. Abuse of discretion is more than an error of law or judgment, it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 13} The Ohio Supreme Court set out the controlling test for Civ.R. 60(B) motions in GTE Automatic Elec., Inc. v. ArcIndustries, Inc. (1976), 47 Ohio St.2d 146, which held that:
"To prevail on a motion brought under Civ.R. 60(B), the movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken."
Id. at paragraph two of the syllabus.
 {¶ 14} Cognovit judgments, however, such as the one at issue in this case, present special circumstances. By definition, cognovit notes "cut off every defense, except payment, which the maker of the note may have against enforcement of the note."Advanced Clinical Mgmt., Inc. v. Salem Chiropractic Ctr., Inc.,
Stark App. No. 2003CA00108, 2004-Ohio-120. In executing a cognovit note and allowing a confession of judgment, the maker of the note waives his or her rights to notice and a prejudgment hearing. D.H. Overmyer Co., Inc., of Ohio v. Frick Co. (1972),405 U.S. 174, 176-177. Although a claim of non-default is "not the only meritorious defense recognized by courts as being available to a cognovit judgment debtor seeking Civ.R. 60(B) relief," in general, a judgment on a cognovit note will "not be vacated for reasons which do not encompass such matters of integrity and validity. " First Nat'l. Bank of Pandora v.Freed, Hancock App. No. 5-03-36, 2004-Ohio-3554.
 {¶ 15} Defenses to cognovit judgment that other courts have found meritorious include, "improper conduct in obtaining the debtor's signature on the note; deviation from proper procedures in confessing judgment on the note; and miscalculation of the amount remaining due on the note at the time of confession of judgment." Freed, supra at 9, fn. 3. "A meritorious defense is one that goes to the integrity and validity of the creation of the debt or note, the state of the underlying debt at the time of confession of judgment, or the procedure utilized in the confession of judgment on the note." Freed, supra at 10.
 {¶ 16} Aerni alleges that the Ohio Carpenters knew or should have known that Lontkowski made or authorized draws from the pension fund for personal or other inappropriate expenditures. Despite this claim, Aerni failed to claim in his motion for relief that the Cognovit Note or Cognovit Guarantees were in any way invalid and also failed to claim that he had paid or made payment on the debt. Therefore, his only claim rests on the Ohio Carpenters alleged breach of fiduciary duty. A claim of breach of fiduciary duty, however, is not a defense to an action on a cognovit note; rather, it is a claim that must be brought in a separate action. See Leonard v. Bank One Youngstown, Ohio (Dec. 24, 1997), Mahoning App. No. 96-C.A.-42.
 {¶ 17} Further, any claim that the Ohio Carpenters breached their contract or interfered with Aerni's business which then prevented him from paying on the note, are also not valid defenses to justify relief. See John H. Kappus Co. v. Markoff
(July 15, 1982), Cuyahoga App. No. 44163. Therefore, even if Aerni alleged sufficient facts to support his claim for breach of fiduciary duty or breach of contract, the trial court could not
have granted him relief from judgment in this case as these are not defenses to the judgment.
 {¶ 18} Aerni's first assignment of error lacks merit. In his second assignment of error, Aerni asserts error in the trial court's failure to conduct an evidentiary hearing prior to the denial of his motion for relief from judgment. However, inAdomeit v. Baltimore (1974), 39 Ohio App.2d 97, which involved a claim for relief from a default judgment, the court found that:
"If the movant files a motion for relief from judgment and it contains allegations of operative facts which would warrant relief under Civil Rule 60(B), the trial court should grant a hearing to take evidence and verify these facts before it rules on the motion."
See, also, Coulson v. Coulson (1983), 5 Ohio St.3d 12, 16.
 {¶ 19} Since we previously found that Aerni failed to establish a meritorious defense entitling him to relief from judgment, he was not, then, entitled to an evidentiary hearing.Architectural Interior Prods., Inc. v. Freeman Doors, LLC,
Franklin App. No. 03AP-265, 2004-Ohio-676.
 {¶ 20} For these reasons, we find that the trial court did not abuse its discretion in denying Aerni's motion for relief from judgment and in failing to conduct an evidentiary hearing.
 {¶ 21} Aerni's first and second assignments of error lack merit.
II. MOTION TO TRANSFER
 {¶ 22} Aerni next asserts error in the failure of Administrative Judge Richard McMonagle to transfer the case to the originally assigned trial court judge, Judge John D. Sutula.
 {¶ 23} The purpose behind the rules permitting reassignment or temporary assignment of judges is to "eliminate whimsical transfers" and to "inhibit real or perceived `judge shopping' and judicial favoritism." Berger v. Berger (1981),3 Ohio App.3d 125, 128.
 {¶ 24} Assignment from one judge to another must certainly be free from the appearance of impropriety, and the rules are also designed to prevent judge shopping. Both Sup.R. 36(B)(2) and Sup.R. 4(B) relate to the assignment of cases and to the authority of an administrative judge. Sup.R. 4(B) provides:
"The administrative judge shall have full responsibility and control over the administration, docket, and calendar of the court or division. * * * The administrative judge shall do all of the following: (1) Pursuant to Sup.R. 36, assign cases to individual judges of the court or division or to panels of judges of the court in the court of appeals."Sup.R. 36(B)(1) provides:"As used in these rules, `individual assignment system' means the system in which, upon the filing in or transfer to the court or a division of the court, a case immediately is assigned by lot to a judge of the division, who becomes primarily responsible for the determination of every issue and proceeding in the case until its termination."
 {¶ 25} Aerni cites Berger, supra, for the proposition that, "absent a journalized order by the administrative judge explaining the need for transferring the case from the assigned judge to himself or another judge, any other judge assuming to act has no authority over the action." However, as the Ohio Supreme Court held in Brickman Sons, Inc. v. National CityBank, 106 Ohio St.3d 30, 34, 2005-Ohio-3559,
"[n]othing in the Rules of Superintendence requires the administrative judge to state the reason for the reassignment in the journal entry. To the extent that Berger,3 Ohio App.3d 125, 3 OBR 141, 443 N.E.2d 1375, attempts to add a requirement to the Rules of Superintendence, it is overruled."
 {¶ 26} Further, this case involved a judgment on a cognovit note, which involves a confession on a judgment. As this court previously held in Quinn v. Bloom (Jan. 25, 1979), Cuyahoga App. No. 38090,
"While the Rules of Superintendence of the Ohio Supreme Court require that a judge to whom a case is assigned determine every issue and proceeding in the case until its termination, Sup.R. 4, the entry of a cognovit judgment by the administrative judge, under the facts in this case, is not considered prejudicial error.
* * *
As the purpose of cognovit notes is to permit the note holder to obtain judgment without trial of possible defenses which the signer of the note may assert, we consider the entry of a cognovit judgment to be merely a ministerial function, which does not require the exercise of personal judgment or discretion. Therefore, the entry of the cognovit judgment by the administrative judge is not prejudicial error."
 {¶ 27} Similar to the issue in Quinn, the entry of a judgment on a cognovit note was a ministerial function that did not require the administrative judge to exercise personal judgment or discretion. In accord with this line of cases and with the nature of cognovit notes themselves, it is the longstanding custom in The Cuyahoga County Common Pleas Court for the administrative judge to handle the issuance of judgment on cognovit notes. It was therefore not error for the administrative judge to transfer this case to his docket and to enter judgment against Aerni.
 {¶ 28} As to the matter of timeliness, Aerni contends that Judge McMonagle transferred the matter to himself on the day the action was filed, giving him no opportunity to object. We disagree. Although Aerni was aware of the assignment to Judge McMonagle upon the date that judgment was entered, on September 24, 2004, he waited until July 21, 2005 to request a transfer. In other words, Aerni waited until Judge McMonagle had denied the requested relief from judgment and until after the first appeal with this court had already been filed to challenge the assignment. Therefore any appearance of impropriety was waived by Aerni's failure to object to a matter until after his motion for relief had been denied.
 {¶ 29} Aerni's third assignment of error lacks merit.
III. STAY OF EXECUTION
 {¶ 30} In his final assignment of error, Aerni asserts that the trial court abused its discretion in denying his motion for stay of execution pending appeal since the record provides no basis to support the rejection.
 {¶ 31} An appellate court applies an abuse of discretion standard when reviewing a trial court's denial of a motion for a stay of execution of judgment and request for bond. Cardone v.Cardone (Sept. 2, 1998), Summit App. No. 18873 A motion for a stay of execution pending appeal is governed by Civ.R. 62(B) which provides:
"(B) Stay upon appeal. When an appeal is taken the appellant may obtain a stay of execution of a judgment or any proceedings to enforce a judgment by giving an adequate supersedeas bond. The bond may be given at or after the time of filing the notice of appeal. The stay is effective when the supersedeas bond is approved by the court."
 {¶ 32} R.C. 2505.09 describes the minimal amount of the bond and states in pertinent part:
"[A]n appeal does not operate as a stay of execution until a stay of execution has been obtained pursuant to the Rules of Appellate Procedure or in another applicable manner, and a supersedeas bond is executed by the appellant to the appellee, with sufficient sureties and in a sum that is not less than, if applicable, the cumulative total for all claims covered by the final order, judgment, or decree and interest involved, except that the bond shall not exceed fifty million dollars excluding interest and costs, as directed by the court that rendered the final order, judgment, or decree that is sought to be superseded or by the court to which the appeal is taken. That bond shall be conditioned as provided in section 2505.14 of the Revised Code."
 {¶ 33} In his motion for stay of execution as filed with the trial court, Aerni cited to the financial hardship that he and his family would endure if they were required to post a supersedeas bond. In his trial court motion and on appeal, Aerni cites to Whitlatch Co. v. Stern (Aug. 19, 1992), Summit App. No. 15345, where the court held that the imposition of a bond was an abuse of the trial court's discretion. Whitlatch, however, involved a request for a supersedeas bond where the payment amount had already been placed in escrow.
 {¶ 34} Further, Aerni cites no authority for the proposition that financial hardship constitutes adequate grounds to exclude the bond requirement or, in the alternative, that only a nominal bond be posted.
 {¶ 35} For these reasons, we cannot say that the trial court abused its discretion in failing to order a stay of execution pending appeal.
 {¶ 36} Aerni's final assignment of error lacks merit. The judgment of the trial court is affirmed.
 APPENDIX ASSIGNMENTS OF ERROR
 "I. JUDGE McMONAGLE ERRED AND ABUSED HIS DISCRETION IN DENYINGAPPELLANT'S MOTION FOR RELIEF FROM JUDGMENT.
 II. JUDGE McMONAGLE ERRED AND ABUSED HIS DISCRETION INREFUSING TO CONDUCT AN EVIDENTIARY HEARING ON APPELLANT'S MOTIONFOR RELIEF FROM JUDGMENT.
 III. JUDGE McMONAGLE ERRED AND ABUSED HIS DISCRETION INDENYING APPELLANT'S MOTION TO TRANSFER CASE TO JUDGE JOHN D.SUTULA.
 IV. JUDGE McMONAGLE ERRED AND ABUSED HIS DISCRETION IN DENYINGAPPELLANT'S MOTIONS FOR STAY OF EXECUTION."
It is ordered that appellee shall recover of appellant costs herein taxed.
The court finds that there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Cooney, P.J., And McMonagle, J. concur.