JOURNAL ENTRY AND OPINION
{¶ 1} This complex case arises from the acrimonious and protracted family dispute which ensued over the management and ownership of the Brickman Funeral Home after the death of its owner and the family patriarch, Frank Brickman, Sr. It has a long and torturous history. This appeal is from the third case filed in the action ("Brickman III").
 {¶ 2} Brickman was the sole shareholder in the corporation. He executed a document transferring all his shares into the Frank Brickman, Sr. Trust. He also arranged to sell the corporation to one of his sons and one of his nephews. Unfortunately, before the sale was consummated, Brickman died on September 30, 2000.
 {¶ 3} The terms of the trust provide that all income was to be paid to his wife after his death. Additionally, if his wife were to be in need of additional funds, the trustee was instructed to apply up to the entire principal of the trust as needed to supply her needs. Upon the death of his wife, the trustee was instructed to divide the trust estate into equal shares among six of his ten children.[1]
 {¶ 4} Brickman named himself as sole trustee and named two of his daughters, Margaret Brickman Elias ("Elias") and Mary Brickman Kopniske ("Kopniske"), as successor co-trustees. He appointed another daughter, Susan Brickman Uher ("Uher"), to serve if either of the two named trustees resigned or was unable to serve. He also appointed Uher as "temporary" trustee for the purpose of breaking any ties between the two co-trustees.
 {¶ 5} At the time of Brickman's death, the corporation had four board members: Elias, Kopniske, Uher, and the brother who hoped to purchase the business from the trust, John Brickman ("John"). On December 20, 2000, a Trustee's meeting was scheduled for 9 AM at the office of the corporation's attorney. When Kopniske and Uher arrived for the meeting, the attorney for both the trust and the corporation told them that Elias was unable to attend. He also informed them that he represented not only Elias, but also the corporation, Brickman's estate, and Brickman's wife, the beneficiary of the trust.
 {¶ 6} Apparently this news was not well received, because Kopniske and Uher proceeded to hold the meeting in the cold outside the offices of the corporation's attorney with just the two of them present. At this meeting, they authorized firing the trust's accountant and hiring their own.
 {¶ 7} They then proceeded to execute waivers for notice of a shareholders' meeting of the corporation and voted to remove their siblings as board members "due to potential and/or actual conflict of interest and/or irregular dealings." They then voted to reduce the number of board members to two and appointed themselves as those two members.
 {¶ 8} Twenty minutes later, they held another board meeting with themselves and fired Elias from her position as Vice President of the corporation and fired John from his position as Treasurer. They also fired Dennis Brickman as Secretary. They then proceeded to appoint themselves as officers of the corporation: Uher as President and Treasurer and Kopniske as Secretary.
 {¶ 9} One week later, they filed suit (Brickman I) on behalf of the trust and the corporation against Elias, the co-trustee, for alleged breach of fiduciary duty to the trust and to the corporation. They accused Elias of using corporate funds to build a home for herself. Although Brickman, who was still alive at the time they allege the funds were misappropriated, signed the checks to Elias from corporate funds, they claimed that Elias used undue influence to obtain the money from him and that he was not competent at the time he signed the checks. They also claimed that Elias influenced Brickman by promising him she "would use the money to build a new home for herself and would title the home in her name and Father [Brickman] and his wife's name and his wife would live there."[2] Complaint inBrickman I, _18. This suit also included a legal malpractice claim against the original attorney for the trust for his part in Elias's actions. Brickman I was assigned to Judge Nancy Fuerst.
 {¶ 10} On February 5, 2001, the widow and beneficiary of the trust filed suit (Brickman II) against the trust, her two daughters, and their attorney for the daughters' actions as trustees. This suit prevented the sale of the corporation. Because the corporation could not be sold, the trust was unable to provide for the widow as Brickman had intended. This second case was assigned to Judge Coyne.
 {¶ 11} The cases were not consolidated, but on December 26, 2001 Judge Coyne was able to facilitate a settlement for both cases, the terms of which the court memorialized on the record. The parties failed to reduce the settlement to writing, however, although their counsel had agreed to its terms on the record. The court then entered the settlement terms into a judgment entry on February 20, 2002. On February 27, the administrative judge, filling in for Judge Coyne, who was unavailable, issued an order reiterating the stay portion of the original settlement agreement: that is, that "there be no payment of any bills or expenses by the Brickman Sons, Inc. Funeral Home from this date forward, until a new trustee begins performing his duties as trustee, except for those bills and expenses incurred in the ordinary course of business."
 {¶ 12} On March 8, 2002, Kopniske and Uher authorized contracts appointing themselves as directors and officers of the corporation. These contracts contained severe penalty provisions for early termination.
 {¶ 13} On March 11, 2002, National City Bank ("NCB") accepted appointment as Successor Trustee. Five days later, Kopniske and Uher fired the corporation's accountant.[3] On March 18, 2002, NCB tried to arrange a meeting for the transition of control of the corporation's operations, finances, and personnel to itself as trustee. The next day, Kopniske and Uher issued over $110,000 from the corporation's bank account to themselves and their attorney.
 {¶ 14} Two days after that, NCB elected new officers and directors of the corporation. When Kopniske and Uher learned of this election, they, in their own names and the corporation's, filed the case which is currently before us, Brickman III, alleging that a controversy exists concerning who owns the shares of the corporation; that NCB breached the corporation's employment agreements with Kopniske and Uher; and that the act of breaching the employment contracts put the corporation "in danger of having a considerably diminished value." Complaint fromBrickman III, _31. They also accused NCB of threatening them with negative publicity.
 {¶ 15} Kopniske and Uher's attorney did not indicate on the face sheet of the complaint that it was related to another case in the court. The face sheets require the filing attorney to "certify to the best of [his] knowledge the within case is not related to any now pending or previously filed, except as noted above." Although their counsel signed this sheet, and although he was counsel of record on both the previous cases, he made no indication that any related litigation had occurred. The case was assigned to a third judge, not one of the first two who had heard issues in this matter.
 {¶ 16} NCB filed a motion either to transfer this case to Judge Coyne or to dismiss this new action. After the administrative judge transferred the new case to Judge Coyne, Judge Coyne held a hearing on the motion to dismiss. The court held that Kopniske and Uher, as well as their attorney, had violated the settlement agreement by issuing money to themselves in violation of the stay which was put in place in the settlement agreement and reordered by the administrative judge; that there was "no basis whatsoever in law or facts that the actions of the bank here were malicious"; that Kopniske's and Uher's attorney did not have the authority to sue on behalf of the corporation; that they had failed to turn over corporate records to NCB despite the fact that they should have done so after the settlement agreement; that the employment contracts "were self-serving in violation of the Stays"; and that Kopniske and Uher had misappropriated funds from the corporation. The court then ordered sanctions against Kopniske, Uher, and their attorney. Dismissing the complaint in Brickman III, the court found "that the original Complaint and the Amended Complaint are barred, as I indicated, by the doctrine of res judicata and judicial estoppel." Tr. May 3, 2002, at 60. Kopniske and Uher appealed.
 {¶ 17} Kopniske and Uher, and allegedly Brickman Sons, Inc., state two assignments of error, the first of which states:
The administrative judge abused his discretion and committed prejudicial error by circumventing the rules of superintendence by reassigning the case specifically to judge william coyne without any stated reason, thus violating the due process rights of appellants.
 {¶ 18} Kopniske and Uher claim that all of Judge Coyne's actions in Brickman III are voidable because the case was not properly transferred to Judge Coyne from the judge drawn and assigned. First, we note that "[a]bsent an affirmative showing of bad faith or fraud in an assignment, there is no due process issue presented by reassignments. Rather, transfers violate governing procedural rules if the record does not show that they have been made by the proper authority with a proper reason."Berger v. Berger (1981), 3 Ohio App.3d 125, 130. Kopniske and Uher made no fraud or bad faith arguments in their appeal. Their due process argument, therefore, fails. Nonetheless, they do state an error which requires this court's attention.
 {¶ 19} The case at bar, Brickman III, was originally assigned to a judge who had never dealt with the parties or issues before. NCB filed a motion to transfer or dismiss the case, which motion Kopniske and Uher opposed. The administrative judge signed an order which stated only: "CASE IS HEREBY TRANSFERRED TO WILLIAM J. COYNE (317)." Kopniske and Uher claim that this order is inadequate to transfer jurisdiction, and, therefore, none of the actions taken by Judge Coyne was valid. They request that this court find the dismissal void ab initio on the basis of Berger v. Berger (1981), 3 Ohio App.3d 125, which holds that the Common Pleas Superintendence Rule requires the administrative judge to give a reason for the transfer on the judgment entry.
 {¶ 20} "The administrative judge's broad power of docket control and case assignment in C.P. Sup. R. 3 must be read together with the assignment system prescribed by C.P. Sup. R. 4 * * *. In view of the language of those rules and earlier case interpretations, we hold that reassignment of any case must be accompanied by a journal entry executed by the administrative judge which states a justifiable reason for transferringresponsibility for the case to another judge. Absent such an entry, the judge assuming to act has no authority and his rulings are voidable on timely objection by any party."[4] Id. at 130, footnote omitted, emphasis added. Kopniske and Uher actually protested this transfer four days before it appeared on the docket and continued to object to the transfer repeatedly.
 {¶ 21} Nonetheless, Judge Coyne proceeded with the case. He declined to consolidate the case on appeal with the previous case in which the parties had entered into a settlement. At hearing, he stated that he, the administrative judge, and the judge assigned to the case in the random draw had determined it was appropriate that this matter be transferred back to Judge Coyne, for further handling, because he was the judge on the earlier case, from "which these matters all emanate * * * and the authority for that is Local Rule 15(H)." April 4 Tr. at 5.
 {¶ 22} Loc.R. 15(H) states:
Pursuant to Civ.R. 42, when actions involving a common question of law and fact are pending in this Court, upon motion by any party, the Court may order a joint trial of any or all of the matters in issue; it may order all or some of the actions consolidated; and it may make such orders concerning the proceedings as may tend to reduce unnecessary costs or delay.
 {¶ 23} The motion for consolidation shall be filed in all actions for which consolidation is sought. All Judges involved in the consolidation motion shall confer in an effort to expedite the ruling. The Judge who has the lower or lowest case number shall rule on the motion. In the event that the Judges cannot agree, the motions shall be referred to the Administrative Judge for ruling.
 {¶ 24} Clearly, transferring the case to Judge Coyne was an order which would "tend to reduce unnecessary costs or delay," because he was already quite familiar with the legal background of the dispute. Nonetheless, this was not a consolidation of two cases, which is the action Loc.R. 15(H) addresses. Rather, it was the transfer of a single existing case. Additionally, Brickman Iand II were not "pending cases" because they had been settled by the agreement reached before the court in Brickman II. BrickmanII had been dismissed with prejudice and the decision deemed final.[5] If, however, Judge Coyne had indeed acceptedBrickman III for consolidation, and thereby considered this case to be a continuation of the unfulfilled judgment entered inBrickman II, jurisdiction would have been proper in his court under Loc.R. 15(H).
 {¶ 25} Judge Coyne did not consolidate. Rather, he dismissedBrickman III as an independent case. The case, however, had been improperly transferred to him by the administrative judge. This court has repeatedly held that "a justifiable reason for the transfer of a case to another judge must be stated in a written entry that leaves no doubt as to what the entry means."Mlinarcik v. Wehrung Parking (1993), 86 Ohio App.3d 134, 142. See also, Jurek v. Jurek (Oct. 13, 1988), Cuyahoga App. No. 54438; In re Robbins (Oct. 3, 1985), Cuyahoga App. No. 49542;Lapp v. Lapp (May 5, 1983), Cuyahoga App. No. 45456); White v.Summit Cty. (2000), 138 Ohio App.3d 116. Unfortunately, the administrative judge's entry does not contain a reason. "[S]ince the journal entry failed to comply with C.P.Sup.R. 4 and case law, the assignment is voidable." Id., citations omitted. See, also, Howard v. East Ohio Gas Co. (Mar. 21, 1985), Cuyahoga App. No. 48725; Dorsky v. Dorsky (Dec. 10, 1981), Cuyahoga App. No. 43587. If the objecting parties had not timely objected to the transfer, then they would have waived their objections. SeeDerricoatte v. Hope (Dec. 23, 1993), Cuyahoga App. Nos. 64446 and 64512; Leone v. Leone (July 25, 1991), Cuyahoga App. No. 60933; Brown v. Brown (1984), 15 Ohio App.3d 45. In this case, however, they objected. Their objections, therefore, make all Judge Coyne's actions voidable.
 {¶ 26} We understand that assigning the case to Judge Coyne served judicial economy. Additionally, we find no error in the findings Judge Coyne made. While we regret the inconvenience and expense involved in reversing and remanding this case to the trial court for proper reassignment, the lack of jurisdiction precludes affirmance.
 {¶ 27} What governs this case is precedent from this and other courts applying the Rules of Superintendence for the Courts of Ohio. That precedent interprets the Rules as requiring the administrative judge to state a justifiable reason. Ignoring the specific language of these cases, the dissent believes it sufficient that the appellate court divine the administrative judge's reason from the record. The dissent argues, moreover, that enforcing such a requirement puts form over substance, encourages end runs, and defeats judicial economy. Essential to any system of justice, however, is the principle that cases be assigned among judges objectively and without preference. The Rule permits an administrative judge to change the judge assigned to a case. It is not an onerous burden for the administrative judge to state a justifiable reason. This requirement, moreover, protects the integrity of that exception. As a result, the judges affected have a chance to understand the basis for the change. More importantly, this procedure requires a "transparency" — to use a current word — to discourage preferential reassignments, as well as the appearance of preference. As Judge Markus explained in Berger, supra, at 128, "* * * restrictions on discretionary case assignments or transfers serve to inhibit real or perceived `judge shopping' and judicial favoritism." Such restrictions are a check on the system. Checks are not always economical, but they are necessary. Thus there is an important consideration behind the holding in Berger that the administrative judge be required to state a justifiable reason. To ignore this requirement is to provide a future opportunity to undermine an even more important judicial principle than judicial economy.
 {¶ 28} Because this opinion voids the court's ruling, the second assignment[6] of error is moot.
 {¶ 29} This case is reversed and remanded for proper reassignment.
 {¶ 30} This cause is reversed.
Blackmon, J., concurs.
[1] Brickman expressly excludes his other four children. He also expressly disinherits those four in his will. None of those four is party to any of the proceedings at bar.
[2] The acrimony in this case is such that Kopniske and Uher refer to their own mother in the pleadings as their father's wife.
[3] This action is separate from their decision to fire the trust's accountant at their December 20, 2001 meeting.
[4] In 1997 The Common Pleas Superintendence Rules were integrated with the Appellate Superintendence Rules in 1997 and are now called the Rules of Superintendence for the Courts of Ohio. The substance of the language concerning the powers and duties of former C.P. Sup.R. 3 remains the same. The language quoted in Berger from former C.P. Sup.R. 4 is now found in Sup.R. 36 and remains essentially unchanged from the former rule.
[5] None of the parties disputes Judge Coyne's continuing jurisdiction to enforce the settlement agreement reached inBrickman I II. See Mack v. Polson Rubber Co. (1984),14 Ohio St.3d 34; Fisco v. H.A.M. Landscaping, Inc., Cuyahoga App. No. 80538 2002-Ohio-6481; Le-Air Molded Plastics, Inc. v.Gofort (Feb. 24, 2000), Cuyahoga App. No. 74543.
[6] {¶ a} The second assignment of error states:
{¶ b} "II. The trial court erred in granting defendant's motion to dismiss by not holding the defendant's motion to dismiss as a motion for summary judgment pursuant to civ.r. 12(b), in violation of the constitutionally guarunteed [SIC] due process rights of plaintiffs' incorrectly applying res judicata as a means for dismissal; incorrectly applying the doctrine of judicial estoppel as a means for dismissal.
{¶ c} "1. The trial court erred in not holding defendant's motion to dismiss as a motion for summary judgment violating appellants' due process rights.
{¶ d} "2. The trial court erred in incorrectly appliying [sic] res judicata as a means for dismissal.
{¶ e} "3. The trial court erred in incorrectly applying the doctrine of judicial estoppel as a means for dismissal."
 KENNETH A. ROCCO, P.J., DISSENTS WITH SEPARATE DISSENTINGOPINION.