DOE, Appellant,

v.

CATHOLIC DIOCESE OF CLEVELAND et al., Appellees.

[Cite as *Doe v. Catholic Diocese of Cleveland*, 158 Ohio App.3d 49, 2004-Ohio-3470.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Nos. 82542 and 83021.

Decided July 1, 2004.

50

Schulman, Schulman & Meros and Howard A. Schulman, for appellant.

Jones, Day, Reavis & Pogue, Robert P. Ducatman, Patrick F. McCartan and John M. Newman, Jr., for appellee Catholic Diocese of Cleveland.

Bonezzi, Switzer, Murphy & Polito Co. and Beth A. Sebaugh, for appellee St. Joseph Church.

COLLEEN CONWAY COONEY, Presiding Judge.

{¶ 1} In this consolidated appeal, plaintiff-appellant, Jane B. Doe ("Doe"), appeals from the trial court's transfer and reassignment of her case to two different judges, claiming that the orders transferring the case failed to state the

reason for the transfers. She also appeals from the trial court's subsequent decision to dismiss the case based on the statute of limitations. She further appeals from two nunc pro tunc journal entries, wherein the administrative judge provided reasons for the reassignments and the denial of Doe's motion for relief from judgment. Finding no merit to the appeals, we affirm.

{¶ 2} In her complaint, Doe alleged that she was sexually abused by Father Wernet between 1962 and 1966. She moved out of state as a child and heard nothing more about Father Wernet until she watched "60 Minutes" in 2002, when she claims she discovered that Father Wernet had molested other children. Based on this information, she claims she learned that the Catholic Diocese of Cleveland ("the Diocese") and St. Joseph Church ("the Church") knew or should have known that Wernet was likely to abuse her. Thus, she argues that the statute of limitations on her claims against the Diocese and the Church did not start to run until she discovered this information in 2002. Accordingly, she seeks to hold the Diocese and the Church liable on a negligence theory.

{¶ 3} Doe filed her complaint on November 12, 2002, and the case was randomly assigned to Judge Nancy Fuerst. On January 28, 2003, Judge Fuerst conducted a case management conference, at which time counsel for the Diocese disclosed that he had had an attorney-client relationship with Judge Fuerst's husband and his firm Burke, Rosen & Associates. Judge Fuerst indicated that she would, therefore, grant a motion for recusal. After Doe's counsel filed a motion for recusal, Judge Fuerst recused herself, and the administrative judge reassigned the case to Judge Nancy McDonnell "for good cause." Judge McDonnell, however, also recused herself, and the underlying case was reassigned to Judge Nancy Margaret Russo, again with an entry by the administrative judge stating the transfer was "for good cause."

{¶ 4} In the meantime, the Diocese filed a motion to dismiss, which Judge Russo granted and Doe appealed. However, on May 7, 2003, this court remanded the case (case No. 82542) to the common pleas court to allow a ruling on Doe's Civ.R. 60(B)(5) motion, which she had filed with Administrative Judge Richard McMonagle.

{¶ 5} Doe's counsel informed Judge McMonagle that the case had been remanded and asserted that the case should be reassigned to a judge who was not a member of the Diocese. Judge McMonagle met with counsel for both parties, heard arguments, and indicated that (1) because he was not the assigned judge, he could not rule on Doe's Civ.R. 60(B) motion, (2) he could not reassign the case from the assigned judge to a non-Catholic judge, (3) the case had been randomly assigned to Judge Fuerst and then Judge McDonnell, and (4) he was going to enter nunc pro tunc journal entries providing specific reasons for the reassignments. The nunc pro tunc entries were journalized on May 15, 2003. On

May 20, 2003, Judge Russo filed a journal entry striking Doe's Civ.R. 60(B) motion because it was not filed with the assigned judge.

{¶ 6} Doe then appealed Judge McMonagle's journal entries and Judge Russo's order (case No. 83021). She also filed her second motion for remand to return case No. 82542 to the trial court. This court again remanded the case, but the trial court found that there were no active motions to review.

{¶ 7} This court consolidated the two appeals, in which Doe raises five assignments of error.

## Nunc Pro Tunc Entries

{¶ 8} In her first assignment of error in case No. 83021, Doe argues that the administrative judge erred when he issued nunc pro tunc journal entries providing explanations for the previously entered orders reassigning the case. Doe argues that the trial court had no jurisdiction to issue the nunc pro tunc journal entries because Doe's appeal divested the trial court of all jurisdiction inconsistent with that of the appeals court to modify, reverse, affirm, or review its judgment. Doe also argues that the nunc pro tunc journal entries did not eliminate the improprieties of the two earlier journal entries because Civ.R. 60(A) authorizes only the correction of clerical mistakes and does not permit substantive changes in orders.

{¶ 9} In *McGowan v. Giles* (Mar. 16, 2000), Cuyahoga App. No. 76332, 2000 WL 284174, this court held:

{¶ 10} "The purpose of a nunc pro tunc entry 'is restricted to placing upon the record evidence of judicial action which has been actually taken' and 'it can be exercised only to supply omissions in the exercise of functions that are clerical merely.' *Jacks v. Adamson* (1897), 56 Ohio St. 397, 402 [47 N.E. 48]; 'The function of nunc pro tunc is not to change, modify, or correct erroneous judgments, but merely to have the record speak the truth.' *Ruby v. Wolf* (1931), 39 Ohio App. 144 [177 N.E. 240] (Emphasis added.); *Dentsply Internatl., Inc. v. Kostas* (1985), 26 Ohio App.3d 116 [26 OBR 327, 498 N.E.2d 1079]. See, also, *Pepera v. Pepera* (March 26, 1987), Cuyahoga App. Nos. 51989, 52024, unreported [1987 WL 8586] (A court may not by way of a nunc pro tunc entry, enter of record that which it intended or might have made but which in fact was not made.)" Id., quoting *Myers v. Shaker Hts.* (June 7, 1990), Cuyahoga App. Nos. 57005 and 58056, 1990 WL 75236.

{¶ 11} Civ.R. 60(A) provides:

{¶ 12} "(A) Clerical Mistakes. Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time on its own initiative or on the motion of any

party and after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending may be so corrected with leave of the appellate court."

{¶ 13} The proper application of Civ.R. 60(A), along with a definition of "clerical mistake," can be found in the case of *Dentsply v. Internatl., Inc. v. Kostas* (1985), 26 Ohio App.3d 116, 26 OBR 327, 498 N.E.2d 1079, wherein this court stated:

{¶ 14} "It is axiomatic that a court has the power to correct a clerical error pursuant to Civ.R. 60(A). However, this rule is applied to inadvertent clerical errors only, * * * and cannot be used to change something which was deliberately done. * * * [T]he nunc pro tunc entry does not reflect a modification of an erroneous judgment but rather supplies omissions of a clerical nature which serve to have the record speak the truth." (Citations omitted.)

{¶ 15} As used in Civ.R. 60(A), a "clerical mistake" is a type of mistake or omission mechanical in nature that is apparent on the record and that does not involve a legal decision or judgment by an attorney. In other words, a correction may add additional information to clarify a prior order but should not change the substance of the original journal entry.

{¶ 16} Further, App.R. 9(E) states:

{¶ 17} "If any difference arises as to whether the record truly discloses what occurred in the trial court, the difference shall be * * * settled by that court and the record made to conform to the truth. If anything material to either party is omitted from the record by error or accident or is misstated therein, the parties by stipulation, or the trial court, either before or after the record is transmitted to the court of appeals, * * * may direct that the omission or misstatement be corrected * * *."

{¶ 18} Thus, even while a case is pending on appeal, the trial court retains jurisdiction to enter nunc pro tunc orders so that the record will conform to what occurred in the trial court. *State v. Hankerson* (Aug. 5, 1981), Hamilton App. No. C–800542, 1981 WL 9939.

{¶ 19} In the instant case, the nunc pro tunc entries do not change the substance of the previous orders that reassigned the case from one judge to another due to recusal. The nunc pro tunc entries simply add additional information concerning what happened in the trial court that necessitated the reassignments. Doe does not dispute that the entries accurately reflect what happened. She sought the first recusal and provided the reason for the first reassignment. Therefore, the trial court had jurisdiction to enter the nunc pro

tunc entries, and we find the entries were proper. Accordingly, Doe's first assignment of error in case No. 83021 is overruled.

{¶ 20} In her first assignment of error in case No. 82542, Doe argues that the administrative judge erred in reassigning the case without stating a justifiable reason for the transfers. Our disposition of the previous assignment of error renders this argument moot. Because the nunc pro tunc entries stated the reason for the transfer, we overrule this assignment of error.

### Motion to Dismiss

{¶ 21} In her second and third assignments of error in case No. 82542, Doe argues that the court erred in granting the motion to dismiss.

{¶ 22} In order for a court to dismiss a complaint under Civ.R. 12(B)(6) for failure to state a claim upon which relief may be granted, it must appear beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 245, 71 O.O.2d 223, 327 N.E.2d 753. Additionally, in construing a complaint upon a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim, we must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the nonmoving party. *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 192, 532 N.E.2d 753.

{¶ 23} " 'A Civ.R. 12(B)(6) motion to dismiss based upon a statute of limitations should be granted only where the complaint conclusively shows on its face that the action is so barred.' *Helman v. EPL Prolong, Inc.*, 139 Ohio App.3d 231, 241, 743 N.E.2d 484, quoting *Velotta v. Leo Petronzio Landscaping, Inc.* (1982), 69 Ohio St.2d 376, 379, 23 O.O.3d 346, 433 N.E.2d 147." *Kennedy v. Heckard,* Cuyahoga No. 80234, 2002-Ohio-6805, 2002 WL 31770490.

{¶ 24} The Diocese and the Church argued in their motion to dismiss that Doe's claims were barred by the two-year statute of limitations set forth in R.C. 2305.10. However, Doe asserts that her claim is not time-barred because the statute of limitations was tolled until she learned that she had a negligence claim after watching an episode of "60 Minutes." Thus, she maintains that the statute of limitations was tolled until she acquired actual knowledge that she had a claim against the Church and the Diocese. Claims of negligence for failing to protect a child victim from "sexual behavior" are subject to R.C. 2305.10, i.e., a two-year statute of limitations. *Doe v. First United Methodist Church* (1994), 68 Ohio St.3d 531, 537, 629 N.E.2d 402. However, pursuant to R.C. 2305.16, this statute is not triggered until the child victim reaches the age of 18.

{¶ 25} In *First United,* 68 Ohio St.3d at 538, 629 N.E.2d 402, the Ohio Supreme Court held that as long as a plaintiff "knows the identity of the perpetrator and is

fully aware of the fact that a battery has occurred," the statute of limitations for a sexual-abuse case begins to run when the plaintiff reaches age 18. Because the plaintiff in *First United* knew the identity of the perpetrator and was aware that a battery occurred, the court held that his claims against the church and the school that employed the abuser were barred because the plaintiff failed to bring his action within two years after he reached the age of majority. Id. at 539–540, 629 N.E.2d 402.

{¶ 26} In the instant case, Doe alleged in her complaint that she knew the identity of the perpetrator, was aware that a battery had occurred, and knew that she could have taken legal action against the perpetrator. According to the complaint, she reached the age of majority 28 years ago. However, she argues that because she alleged that she did not have actual knowledge that she had any legal claim against the Church and the Diocese until she watched "60 Minutes," the statute of limitations was tolled. We disagree.

{¶ 27} The Ohio Supreme Court has held that "the discovery rule applies in Ohio to toll the statute of limitations where a victim of childhood sexual abuse represses memories of that abuse until a later time." *Ault v. Jasko* (1994), 70 Ohio St.3d 114, 117, 637 N.E.2d 870. Thus, in the absence of repressed memory, the limitations period begins to run when a plaintiff reaches 18 years of age. *Livingston v. Diocese of Cleveland* (1998), 126 Ohio App.3d 299, 303, 710 N.E.2d 330, appeal not allowed (1998), 82 Ohio St.3d 1412, 694 N.E.2d 75 (holding that discovery rule tolls statute of limitations in child sexual abuse cases only where plaintiff represses memories of abuse); *Doe v. Rupp* (Jan. 29, 1998), Cuyahoga App. Nos. 71938 and 72966, 1998 WL 32774 (holding that where plaintiff knew he had been abused, knew the identity of the perpetrator, and thus knew the possibility of Diocesan negligence in failing to protect him, statute of limitations is not tolled).

{¶ 28} In the instant case, because Doe does not allege that she repressed memories of the alleged abuse, the statute of limitations was not tolled but expired over 26 years ago. Therefore, the trial court properly dismissed the complaint as barred by the statute of limitations.

{¶ 29} Additionally, this court considered a similar case involving the same defendants and alleging the same type of abuse by the same individual during relatively the same time period. See *Livingston*, supra. This court determined that the action was time-barred because there was no evidence of repressed memory and thus the statute of limitations was not tolled. Similarly, Doe makes no claim of repressed memory in her complaint and ignores that she had a duty to exercise reasonable diligence to determine whether she had a claim. Accordingly, we are obliged to follow *Livingston* and thus conclude that Doe's claims are time-barred.

{¶ 30} Doe places great reliance on *Norgard v. Brush Wellman, Inc.*, 95 Ohio St.3d 165, 2002-Ohio-2007, 766 N.E.2d 977. In *Norgard*, the plaintiff developed a rash while at work and years later was diagnosed with chronic beryllium disease a debilitating and sometimes fatal lung disease caused by exposure to beryllium. Three years later, Norgard read an article about beryllium lawsuits against his employer and filed a lawsuit alleging that the employer withheld information about the causes of beryllium-related diseases, knew its air samples were inaccurate, and had faulty ventilation equipment.

{¶ 31} The Ohio Supreme Court held that the cause of action based upon the employer's intentional tort accrued when the employee discovered, or by the exercise of reasonable diligence should have discovered, the workplace injury and the wrongful conduct of the employer. Thus, the court found that the statute of limitations had tolled because it found the employee did not know and had no reason to know that any wrongful conduct had occurred.

{¶ 32} Moreover, the *Norgard* court further explained that any discovery rule "must be specially tailored to the particular context to which it is to be applied." *Norgard* at ¶ 10. The *Norgard* court found that if the victim is aware that wrongful conduct has occurred, the limitations period is not tolled.

{¶ 33} Unlike the plaintiff in *Norgard,* Doe knew that wrongful conduct had occurred because she admitted in her complaint that she knew she was abused and she knew the identity of the perpetrator. However, she failed to exercise reasonable diligence to discover whether the Church and the Diocese were also guilty of wrongful conduct.

{¶ 34} Accordingly, the second and third assignments of error in case No. 82542 are overruled.

## Civ.R. 60(B)(5) Motion

{¶ 35} In her second assignment of error in case No. 83021, Doe argues that the trial court erred when it struck her Civ.R. 60(B) motion and denied it as moot. Judge Russo struck the Civ.R. 60(B) motion as "improperly filed" because it "was filed with the non-assigned judge." Doe explained that she filed the motion with the administrative judge's name in the caption because it was her position that the two reassignments were improper and that the case was still pending before the administrative judge as a result of the subsequent recusal of Judge Fuerst.

{¶ 36} Clearly, Judge Russo had the authority to rule on the motion. Merely because the caption contains a different judge's name does not mean the motion is "not properly before the assigned judge." Thus, Judge Russo could have ruled on the motion and could have denied it.

{¶ 37} Nonetheless, because the motion to dismiss was properly granted, any error by Judge Russo in failing to rule on the Civ.R. 60(B) motion was harmless. This court's affirmance of the court's dismissal renders this assignment of error moot.

Judgment affirmed.

JAMES D. SWEENEY, J., concurs.

DIANE KARPINSKI, J., dissents.

JAMES D. SWEENEY, J., retired, of the Eighth Appellate District, sitting by assignment.

KARPINSKI, Judge, dissenting.

{¶ 38} I respectfully dissent because I believe that the majority has not applied the proper standard in its analysis of whether plaintiff's claims against defendants are time-barred by the two-year statute of limitations set forth in R.C. 2305.10. I also disagree with the majority about the validity of the administrative judge's transfers of this case below and the two subsequent nunc pro tunc entries related to those transfers.

{¶ 39} In their motion to dismiss, defendants claimed that the statute began to run when Wernet began sexually abusing plaintiff and that she had continuous knowledge of that abuse from 1962 through 1966 when she claims the molestation stopped.

{¶ 40} According to defendants, the last instance of abuse would have occurred in 1966. Defendants agree that since plaintiff was a minor when the abuse occurred, the period of limitations was tolled at least until she reached the age of majority. After that, defendants claim, and the majority agrees, that plaintiff would have had two years within which to file her complaint. Since plaintiff did not commence suit until November 2002, when she was 46 years old, the majority says that her action against defendants is now barred.

{¶ 41} Plaintiff argues that the statute of limitations began to run in the spring of 2002, when she first discovered defendants had harmed her by not protecting her from Wernet. I agree with plaintiff that the "discovery" test applies here.

{¶ 42} The Ohio Supreme Court declared that the "discovery rule" applied to sexual abuse cases in *Ault v. Jasko* (1994), 70 Ohio St.3d 114, 637 N.E.2d 870. In that case, plaintiff had for years repressed any memory of her childhood abuse. In the case at bar plaintiff does not claim repressed memory. Relying on *Ault*, the majority states that "in the absence of repressed memory, the limitations period begins to run when a plaintiff reaches 18 years of age." The majority then goes on to conclude that because this case does not involve repressed

memory, the limitations period expired two years after plaintiff reached 18, and her claims are barred here.

{¶ 43} *Ault*, however, does not control in this case. *Doe v. First United Methodist Church* (1994), 68 Ohio St.3d 531, 629 N.E.2d 402, is the relevant authority. In *Doe*, plaintiff alleged sexual abuse by Masten, a choir director within the defendant school district and a musical director at defendant church. Plaintiff also brought "independent claims against the church and school district arising from the alleged negligence of these defendants in failing to take some action to protect [plaintiff] from Masten's conduct." Id. at 539, 629 N.E.2d 402.

{¶ 44} Addressing the viability of plaintiff's claims against the school district and the church, the Supreme Court of Ohio clarified the different standards:

{¶ 45} "These claims are based upon the church's and the school district's own acts or omissions and have nothing to do with any theory of derivative liability. Thus, we recognize that the facts and events which triggered the statute of limitations on appellant's claims for sexual abuse did not necessarily trigger the R.C. 2305.10 two-year period of limitations on appellant's independent negligence claims against the church and the school district." Id.

{¶ 46} The court, however, dismissed plaintiff's claims against the school district and the church because plaintiff never claimed or argued that his knowledge of the sexual abuse was insufficient to apprise him of the possibility that the church or the school district had been negligent in failing to protect him from Masten. Under these circumstances, we are left to assume that the events that triggered the one-year statute of limitations for assault and battery were no different from the events that triggered the two-year statute of limitations that applies to appellant's negligence causes of action against the church and the school district. Therefore, the two-year period of limitations commenced in July 1984, and appellant's negligence claims against the church and the school district are barred by R.C. 2305.10. Id.

{¶ 47} Unlike the plaintiff in *Doe*, plaintiff in the case at bar specifically alleges that before the spring of 2002, her knowledge about the breadth and scope of Wernet's sexual abuse of others was insufficient to put her on notice that defendants may have been negligent.

{¶ 48} In another case in 2002, the Ohio Supreme Court explained further:

{¶ 49} "[D]iscovery of an injury alone is insufficient to start the statute of limitations running if at that time there is no indication of *wrongful conduct* of the defendant. Moreover, the court has been careful to note that the discovery rule must be specially tailored to the particular context to which it is to be applied. *Browning v. Burt* (1993), 66 Ohio St.3d 544, 559, 613 N.E.2d 993.

{¶ 50} "* * *

{¶ 51} "This holding is consistent with the rationale underlying a statute of limitations and the discovery rule. Its underlying purpose is fairness to both sides. Once a plaintiff knows of an injury and the cause of the injury, the law gives the plaintiff a reasonable time to file suit. Yet if a plaintiff is *unaware that his or her rights have been infringed,* how can it be said that he or she slept on those rights? To deny an employee the right to file an action before he or she discovers that the injury was caused by the employer's *wrongful conduct* is to deny the employee the right to bring any claim at all. By applying the discovery rule as we do, we take away the advantage of employers who conceal harmful information until it is too late for their employees to use it." (Emphasis added.) *Norgard v. Brush Wellman, Inc.,* 95 Ohio St.3d 165, 2002-Ohio-2007, 766 N.E.2d 977, at ¶ 10 and 19.

{¶ 52} The Supreme Court's analysis in *Norgard* clearly establishes the discovery standard that should be applied here.

{¶ 53} In the case at bar, plaintiff filed her complaint in November 2002, after watching a television show in which she learned that others had also been abused by Wernet. Plaintiff says this was the very first time she learned defendants may have known that Wernet had been sexually abusing children both before 1962 and thereafter. At paragraph 8 of her complaint, plaintiff states, in part, as follows:

{¶ 54} "Prior to the spring of this year, plaintiff never knew, and never discovered that either the Church or the Diocese had any knowledge that Wernet had fondled, molested or inappropriately touched any other child prior to or during his sexual abuse of the plaintiff."

{¶ 55} According to the majority, because plaintiff knew that she was harmed by Wernet in the years between 1962 and 1966, she also knew or should have discovered any wrongdoing by defendants. This conclusion is too big a leap and goes beyond a question of law. This question is essentially for the jury.

{¶ 56} Moreover, the conclusion the majority reaches misses the crucial distinction between when, according to plaintiff, she first learned she had been harmed by Wernet and when she first became aware her harm was a result of the allegedly wrongful conduct of the Diocese and St. Joseph Church. In other words, she says, only later did she realize that the Diocese and St. Joseph Church knew or should have known Wernet was abusing other victims before 1962 or during the time Wernet was sexually abusing plaintiff and therefore should have known to protect her and did not. The facts and events that triggered the statute of limitations on plaintiff's claims against Wernet for sexual abuse did not necessarily trigger the R.C. 2305.10 two-year period of limitations because this claim is based on independent negligence claims against defendants.

{¶ 57} Under *Doe* and *Norgard*, the period of limitations against defendants could not arise until plaintiff discovered that the Diocese and the Church may have engaged in wrongful conduct, that is, that they had knowledge about Wernet's injurious conduct but did nothing in order to protect her. The majority focuses on Wernet as the perpetrator, which he is under the theory of respondeat superior. Under the negligence claim, however, defendants are the alleged wrongdoers, not Wernet.

{¶ 58} Unlike the situation in *Livingston*, cited by the majority, the case at bar does not involve a claim against any of the defendants for respondeat superior. Plaintiff has "alleged negligence, negligent and intentional infliction of emotional distress, and breach of fiduciary duty against appellee." Id.

{¶ 59} Even though the plaintiffs in *Livingston* alleged the Diocese's negligence in failing to protect plaintiffs, the court never addressed that claim. Moreover, unlike the situation in this case, the plaintiffs in *Livingston* never claimed to have discovered the separate harm committed by one of the defendants years later. Thus *Livingston* is distinguishable from the case at bar.

{¶ 60} To apply the proper discovery rule, that is, the rule enunciated in *Doe*, requires deciding who allegedly committed the wrongful conduct at issue: (1) the person who directly abused the child or (2) those who she claims neglected to protect her from the abuse. Plaintiff claims defendants' negligence caused her injury. This claim, for purposes of the discovery rule and the applicable period of limitations, is separate and distinct from the injuries she suffered from Wernet. Plaintiff is *not* alleging defendants have derivative liability (respondeat superior) for Wernet's misconduct. Instead, plaintiff alleges that she was harmed not only by Wernet, which harm would be one cause of action,[1] but also separately by defendants because of their own misfeasance in failing to warn her about Wernet or by failing to remove him from his duties in order to remove the opportunity he had to abuse plaintiff. For pleading purposes, this is a separate cause of action having less to do with what Wernet did to plaintiff between 1962 and 1966, although the abuse itself would still have to be proven in the negligence claim.

{¶ 61} Construing the allegations of the complaint in plaintiff's favor, as we must, I conclude that her complaint survives defendants' 12(B)(6) motion because she sufficiently alleged that the period of limitations against defendants began to run in the spring of 2002, when she first became aware that defendants' negligence harmed her. Plaintiff's complaint, therefore, was timely filed, and the trial court erred in granting defendants' motion to dismiss. I would therefore sustain plaintiff's second assignment of error.

---

1. Plaintiff is not suing Wernet, who died in 1980.

{¶ 62} I also disagree with the majority's disposition of plaintiff's sole assignment of error in case No. 82542 [2] and her first assignment of error in case No. 83021. [3]

{¶ 63} In these two assignments of error, plaintiff argues that the administrative judge's initial transfers [4] from Judge Fuerst to Judge McDonnell and then to Judge Russo are voidable. Plaintiff claims that, when Judge Russo granted defendants' motion to dismiss, she did not have jurisdiction over the case because the transfer orders were incomplete. Plaintiff also claims that the court's two subsequent nunc pro tunc orders [5] are equally invalid. According to plaintiff, because of these errors, Judge Russo's dismissal of her complaint is, therefore, a nullity.

{¶ 64} Plaintiff relies on the authority of *Berger v. Berger* (1981), 3 Ohio App.3d 125, 3 OBR 141, 443 N.E.2d 1375, which holds that the Common Pleas Superin-

---

**2.** The assignment of error reads: "THE TWO REASSIGNMENTS AND THE JOURNAL ENTRY GRANTING THE MOTION TO DISMISS ARE 'VOIDABLE' AND 'MUST BE VACATED.'"

**3.** The assignment of error reads: "THE ADMINISTRATIVE JUDGE ERRED WHEN HE ISSUED TWO *NUNC PRO TUNC* JOURNAL ENTRIES IN A PURPORTED ATTEMPT TO 'CORRECT' THE IMPROPRIETIES IN HIS EARLIER TWO JOURNAL ENTRIES."

**4.** {¶ a} On February 5, 2003 the docket reads as follows:
{¶ b} "CAPTIONED CASE BEING ORIGINALLY ASSIGNED TO JUDGE NANCY FUERST (322) AND FOR GOOD CAUSE SHOWN, THIS MATTER IS HEREBY REASSIGNED AND TRANSFERRED TO THE DOCKET OF JUDGE NANCY R. McDONNELL (324) FOR FURTHER PROCEEDINGS ACCORDING TO LAW. BOOK 2876 PAGE 0126 02/05/2003 NOTICE ISSUED."
{¶ c} The next day, February 6, 2003, there is another entry which reads:
{¶ d} "CAPTIONED CASE BEING ORIGINALLY ASSIGNED TO JUDGE NANCY R. McDONNELL (324) AND FOR GOOD CAUSE SHOWN, THIS MATTER IS HEREBY REASSIGNED AND TRANSFERRED TO THE DOCKET OF JUDGE NANCY MARGARET RUSSO (326) FOR FURTHER PROCEEDINGS ACCORDING TO LAW. BOOK 2877 PAGE 0170 02/06/2003 NOTICE ISSUED."

**5.** {¶ a} Those entries, respectively, read as follows:
{¶ b} "NUNC PRO TUNC AS OF AND FOR 2/3/03; CAPTIONED CASE BEING ORIGINALLY ASSIGNED TO JUDGE NANCY A. FUERST AND FOR GOOD CAUSE SHOWN, THAT IS, HER HUSBAND IS A CLIENT OF THE DEFENDANTS' LAW FIRM, THIS MATTER IS HEREBY REASSIGNED AND TRANSFERRED TO THE DOCKET OF JUDGE NANCY R. McDONNELL FOR FURTHER PROCEEDINGS ACCORDING TO LAW. (HEARD BY ADMINISTRATIVE JUDGE RICHARD J. McMONAGLE)."
{¶ c} "NUNC PRO TUNC AS OF AND FOR 2/5/03; CAPTIONED CASE BEING ORIGINALLY ASSIGNED TO JUDGE NANCY R. McDONNELL AND FOR GOOD CAUSE SHOWN, THAT IS, HER YOUNGSTER IS A POTENTIAL WITNESS IN A RELATED MATTER, THIS MATTER IS HEREBY REASSIGNED AND TRANSFERRED TO THE DOCKET OF JUDGE NANCY MARGARET RUSSO FOR FURTHER PROCEEDINGS ACCORDING TO LAW. (HEARD BY ADMINISTRATIVE JUDGE RICHARD J. McMONAGLE)."

tendence Rule[6] requires the administrative judge to give a reason for the transfer on the judgment entry.

{¶ 65} "The administrative judge's broad power of docket control and case assignment in C.P. Sup. R. 3 must be read together with the assignment system prescribed by C.P. Sup. R. 4 * * *. In view of the language of those rules and earlier case interpretations, we hold that reassignment of any case must be accompanied by a journal entry executed by the administrative judge *which states a justifiable reason for transferring responsibility for the case to another judge.* Absent such an entry, the judge assuming [sic] to act has no authority and his rulings are voidable on timely objection by any party." (Emphasis added.) Id. at 130, 3 OBR 141, 443 N.E.2d 1375.

{¶ 66} On February 5th, the administrative judge transferred plaintiff's case from Judge Fuerst to Judge McDonnell. The next day, the case was transferred again, this time to Judge Russo. Both entries say the transfers were "for good cause shown." Then, only days later, on February 11th, Judge Russo granted defendant's motion to dismiss plaintiff's complaint.

{¶ 67} Because of the truncated time frame between the court's transfers and the dismissal of plaintiff's complaint, we conclude that plaintiff did not have an opportunity to timely object to the transfers before her case was dismissed. Plaintiff did, however, timely appeal the improper nature of those transfers to this court.

{¶ 68} This court has repeatedly held that "a justifiable reason for the transfer of a case to another judge must be stated in a written entry that leaves no doubt as to what the entry means." *Mlinarcik v. E.E. Wehrung Parking* (1993), 86 Ohio App.3d 134, 142, 620 N.E.2d 181. See also, *Jurek v. Jurek* (Oct. 13, 1988), Cuyahoga App. No. 54438, 1988 WL 112967; *In the Matter of Robbins* (Oct. 3, 1985), Cuyahoga App. No. 49542, 1985 WL 8096; *Lapp v. Lapp* (May 5, 1983), Cuyahoga App. No. 45456, 1983 WL 2955; *White v. Summit Cty.* (2000), 138 Ohio App.3d 116, 740 N.E.2d 688. Case law from this court has interpreted the rules as requiring the administrative judge to *state* a justifiable reason. The phrase the administrative judge used—"for good cause shown"—is merely an *assertion* that the reason is "justifiable." Such an assertion is not the same as *stating* a justifiable reason.

---

6. In 1997 The Common Pleas Superintendence Rules were integrated with the Appellate Superintendence Rules and are now called the Rules of Superintendence for the Courts of Ohio. The substance of the language concerning the powers and duties of former C.P.Sup.R. 3 remains the same. The language quoted in *Berger* from former C.P.Sup.R. 4 is now found in Sup.R. 36 and remains essentially unchanged from the former rule.

{¶ 69} In the case at bar, the administrative judge's entry does not state a specific reason. This court in *Mlinarcik* found inadequate the administrative judge's entry, which stated "ASSIGNED JUDGE UNAVAILABLE." Rather than provide a justifiable reason for transferring the case to another judge, the court's entry merely stated "a conclusion and not a reason as contemplated by the rules and case decision * * *." "Therefore," the court concluded, "it fail[ed] for lack of proper reason." (Citations omitted.) Id., 86 Ohio App.3d at 143, 620 N.E.2d 181.

{¶ 70} I agree with this reasoning. See, also, *Howard v. East Ohio Gas Co.* (Mar. 21, 1985), Cuyahoga App. No. 48725, 1985 WL 9792; *Dorsky v. Dorsky* (Dec. 10, 1981), Cuyahoga App. No. 43587, 1981 WL 4675. As we said recently in *Brickman & Sons, Inc. v. Natl. City Bank, Trustee*, Cuyahoga App. No. 81428, 2004-Ohio-1447, 2004 WL 583856:

{¶ 71} "Essential to any system of justice * * * is the principle that cases be assigned among judges objectively and without preference. The Rule permits an administrative judge to change the judge assigned to a case. It is not an onerous burden for the administrative judge to state a justifiable reason. This require-ment, moreover, protects the integrity of that exception. As a result, the judges affected have a chance to understand the basis for the change. More important-ly, this procedure requires a 'transparency'—to use a current word—to discour-age preferential reassignments, as well as the appearance of preference. As Judge Markus explained in *Berger*, supra, at 128, 3 OBR 141, 443 N.E.2d 1375, '* * * restrictions on discretionary case assignments or transfers serve to inhibit real or perceived "judge shopping" and judicial favoritism.' Such restrictions are a check on the system. Checks are not always economical, but they are necessary. Thus there is an important consideration behind the holding in *Berger* that the administrative judge be required to state a justifiable reason. To ignore this requirement is to provide a future opportunity to undermine an even more important judicial principle than judicial economy."

{¶ 72} Apparently realizing the deficiency of his explanation, the administrative judge subsequently provided a proper explanation in his nunc pro tunc entries. Because the notice of appeal was already filed, however, and the case remanded solely for the purpose of ruling on the 60(B) motion, the lower court lacked jurisdiction to file the nunc pro tunc entries.

{¶ 73} The majority argues, on the other hand, that "even while a case is pending on appeal, the trial court retains jurisdiction to enter nunc pro tunc orders so that the record will conform to what occurred in the trial court. *State v. Hankerson* (Aug. 5, 1981), Hamilton App. No. C–800542, 1981 WL 9939." The rule authorizing specifically nunc pro tunc orders is Civ.R. 60(A), which states:

{¶ 74} "Clerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time on its own initiative * * *. During pendency of an appeal such mistakes may be so corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending may be so corrected *with leave of the appellate court.*" (Emphasis added.) See *Weinstock v. Yeshivath Adath B'nai Israel* (May 11, 1995), Cuyahoga App. No. 67413, 1995 WL 277067, citing *Majnaric v. Majnaric* (1975), 46 Ohio App.2d 157, 75 O.O.2d 250, 347 N.E.2d 552; *Vavrina v. Greczanik* (1974), 40 Ohio App.2d 129, 69 O.O.2d 146, 318 N.E.2d 408; Civ.R. 60; and *State ex rel. Henry v. Britt* (1981), 67 Ohio St.2d 71, 21 O.O.3d 45, 424 N.E.2d 297.

{¶ 75} "'* * * The term 'clerical mistake' does not mean that it must be made by a clerk. The phrase merely describes the type of error identified with mistakes in transcription, alteration or omission of any papers and documents which are traditionally or customarily handled or controlled by clerks but which papers or documents may be handled by others. It is a type of mistake or omission mechanical in nature which is apparent on the record and which does not involve a legal decision or judgment by an attorney * * *." (Citations omitted.) *Dentsply Internatl., Inc. v. Kostas* (1985), 26 Ohio App.3d 116, 118, 26 OBR 327, 498 N.E.2d 1079.

{¶ 76} Further, Civ.R. 60(A) authorizes the correction of clerical mistakes only. *Musca v. Chagrin Falls* (1981), 3 Ohio App.3d 192, 3 OBR 219, 444 N.E.2d 475. The majority opinion quotes a decision of this court which quoted an earlier case as follows: "A court may not by way of a nunc pro tunc entry, enter of record that which it intended or might have made but which in fact was not made." *McGowan v. Giles*, quoting a 1990 case of this court, which, in turn, cited an even earlier case of this court in 1987. The majority, however, ignores this long-established principle. The record preceding the challenged transfer from Judge McDonnell does not indicate the reason that the judge had requested that the case be transferred from her. To "simply add additional information concerning what happened in the trial court," as the majority described the nunc pro tunc entries, is to enter "that which it intended or might have made but which in fact was not made." It is much more than a correction of a clerical error to add this information. Without approval of the appellate court, such an addition is an abuse of the nunc pro tunc entry. The majority, therefore, has clearly contradicted this principle, which this court in at least three cases has adopted: the error or omission must be "mechanical" and "apparent on the record."

{¶ 77} Arguably, the transfer from Judge Fuerst might be viewed as different from the second transfer. The motion requesting the judge to recuse herself laid out in the record all the factors that could have justified the transfer. Thus it

might be argued that the information was in the record; adding it as a reason for the transfer simply made explicit what was previously implicit as a reason. But this argument does not apply to the second transfer. The majority also acknowledges that a "clerical mistake" "does not involve a legal decision or judgment by an attorney." *Dentsply Internatl., Inc. v. Kostas,* 26 Ohio App.3d at 118, 26 OBR 327, 498 N.E.2d 1079. What the nunc pro tunc entry added was a reason in order to comply with a legal requirement. Providing the reason for a legal decision clearly involves "a legal decision or judgment by an attorney." Reviewed under the *Kostas* criterion, this record contains no evidence of a clerical mistake.

{¶ 78} The majority argues, however, that "the nunc pro tunc entries do not change the substance of the previous orders which reassigned the case from one judge to another due to recusal." Contrasting the explicit language of Sup.R. 4 with the purpose of Civ. R. 60(A), one must conclude that if the administrative judge fails to provide a "justifiable reason" for a transfer at the time the transfer is made, then that order fails to state the substantive reason the transfer was made: it fails to state why the action was actually taken. Allowing the court to thereafter state, through a nunc pro tunc, the substantive reason for its earlier action allows an end run and undermines the purpose of Civ.R. 60(A). *Brickman,* supra.

{¶ 79} The majority cites to App.R. 9(E), which it interprets to also permit the trial court in this case to enter its two nunc pro tunc entries. I do not agree with this interpretation.

{¶ 80} There are two kinds of omissions: (1) where what occurred is omitted and (2) where nothing occurred to be reported. If the administrative judge had written out an explanation for his transfer but the docket failed to include this statement, then this omission could be corrected pursuant to App.R. 9(E). Here, however, no reason was ever given when the case was transferred. A reason was added later during a limited remand for a specific purpose—which did not include giving a reason to transfer two cases. The second example is not an acceptable correction of the record. App.R. 9(E) refers only to omissions from the record, not to legal errors in documents contained within the record. For example, in a case sent back on limited remand, a trial court may not add reasons to its original decision granting summary judgment. Such an addition would change the record.

{¶ 81} Such later corrections would defeat the purpose for requiring reasons for transfers in the first place. To allow a correction after the appellant has filed an appeal permits administrative judges to dally and hide their reasons, although that did not happen here. Trial judges should not have to wait upon an appeal being filed to know why a case is transferred. Such transfers affect not only the two judges directly involved in the transfer. They can affect the fairness of the

system. Requiring reasons provides a check on that system, but that check is compromised if reasons are not required from the beginning and if there is no opportunity to scrutinize them without the extra burden of filing an appeal. The purpose of App.R. 9(E) is not to give judges a second chance, just as it is not the purpose to add to the burden of appellants. If correcting clerical errors after the appeal is docketed requires leave from the appellate court under Civ.R. 60(A), it would be incongruous to allow the court under App.R. 9(E) to add to the record what was never there except perhaps in the mind of Zeus.

{¶ 82} In support of its reading of App.R. 9(E), the majority relies on the case of *State v. Hankerson* (Aug. 5, 1981), Hamilton App. No. C–800542, 1981 WL 9939. In *Hankerson,* when the trial court entered its nunc pro tunc order "finding that the goods in question exceeded $150 in value," the court explained that the change had already been stipulated to by defense counsel. The nunc pro tunc order, therefore, reflected what had actually taken place earlier in the proceedings. This factual scenario is not present in this case: no such stipulation occurred here. Because the facts in *Hankerson* are inapposite to the facts in this case, it is unpersuasive authority.

{¶ 83} Because at least one of the transfers in this case was improper insofar as it did not include a statement explaining the court's reason for transferring the case and that explanation was not even implicitly in the record and because the lower court subsequently lost jurisdiction to correct the transfer entries, the court's dismissal was void. I would therefore sustain these assignments of error.

{¶ 84} Finally, I disagree with the majority when it says that "because the motion to dismiss was properly granted, any error by Judge Russo in failing to rule on the Civ.R. 60(B) motion was harmless." Because the court lacked jurisdiction to grant a motion, the dismissal was void. The court's ruling on the 60(B) motion, therefore, is also void for the same reasons the dismissal is void: lack of jurisdiction. I would therefore sustain this assignment of error as well.